**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOLYNNE CHRISTIANSEN, JOHN DOE, EVELYN HARRIS, DANIEL MCCORMICK, JOAN MIGLIACCIO, MICHELLE MULANAX, GARY ROWE, DAVID YANCEY, and KELLY ROSAL, *individually and on behalf of all others similarly situated*, | ) ) ) ) ) ) ) ) ) | Case No. 1:22-cv-835

Judge Hon. Dan Aaron Polster |
| Plaintiffs, | ) ) | **CLASS ACTION** |
| v. | ) ) | |
| PARKER HANNIFIN CORPORATION, | ) ) | |
| Defendant. | ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.   BACKGROUND ...................................................................................................1

   A. History of Litigation .......................................................................................1

   B.  Negotiations and Settlement ..........................................................................3

   C.   Summary of Settlement Terms ......................................................................4

      1.  Compensation ..........................................................................................5

      2.  Scope of the Release ...............................................................................6

      3.  The Notice and Administration Plans ....................................................6

      4.  Attorneys' Fees, Costs, Expenses, and Service Awards ........................8

II.  LEGAL STANDARD ..........................................................................................8

III. ARGUMENT ........................................................................................................9

   A.  The Proposed Settlement Satisfies the Standanrd for Preliminary Approval. ...................9

      1.  The Proposed Settlement was reached after serious, informed, and arm's-
          length negotiations ...............................................................................9

      2.  The proposed Settlement falls within the range of reasonableness and warrants
          issuance of notice and a hearing on final approval of settlement .................. 10

      3.  The Proposed Settlement has no obvious deficiencies ................................. 11

      4.  Certification under Rule 23(b)(3) is appropriate ........................................... 11

   B.  Certification of the Settlement Class is Appropriate ........................................12

      1.  Numerosity ........................................................................................... 12

      2.  Commonality .......................................................................................... 13

      3.  Typicality ............................................................................................. 13

      4.  Adequacy of Representation ....................................................................... 14

      5.  Certification under Rule 23(b)(3) is appropriate ........................................... 15

         a.  *Common Questions of Law and Fact Predominate* .................................. 15

         b.  *A Class is the Superior Method of Adjudicating this Case* ...................... 16

C.   The Court Should Appint the Proposed Class Representatives, Class Counsel, and Settlement Administrator ...............................................................................17

D.   The Proposed Form and Manner of Notice is Reasonable and Should be Approved........18

E.   The Court Should Provide a Schedule Leading Up to the Fairnes Hearing ......................19

**CONCLUSION** .......................................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods. v. Windsor*,
  521 U.S 591 (1997) ............................................................................................ 12, 14, 15, 17

*Amos v. PPG Indus.*,
  No. 2:05-cv-70, 2015 WL 4881459 (S.D. Ohio Aug. 13, 2015) .......................................... 8, 10

*Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  105 F.R.D. 506 (S.D. Ohio 1985) ....................................................................................... 13

*Bautista v. Twin Lakes Farms, Inc.*,
  No. 104-CV-483, 2007 WL 329162 (W.D. Mich. Jan. 31, 2007) ........................................... 9

*Brotherton v. Cleveland*,
  141 F. Supp. 2d 894 (S.D. Ohio 2001) ............................................................................ 9, 10

*Chesher v. Neyer*,
  215 F.R.D. 544 (S.D. Ohio 2003) ....................................................................................... 14

*Davis v. Omnicare, Inc.*,
  No. 5-18-CV-142-REW, 2021 WL 1214501 (E.D. Ky. Mar. 30, 2021) ................................. 11

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 .................................................................................................................... 18

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ............................................................................................. 18

*Fields v. KTH Parts Industries, Inc.*,
  No. 3:19-cv-8, 2022 WL 3223379 (S.D. Ohio Aug. 9, 2022) ............................................... 11

*Franks v. Kroger Co.*,
  649 F.2d 1216 (6th Cir. 1981) ............................................................................................. 8

*Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ............................................................................................. 15

*Frost v. Household Realty Corp.*,
  61 F. Supp. 3d 740 (S.D. Ohio 2004) ................................................................................. 19

*Hyland v. Homeservs. of Am., Inc.*,
  No. 3:05-CV-612-R, 2009 WL 2525587 (W.D. Ky. Aug. 17, 2009) ....................................... 9

*In re Am. Med. Sys. Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ....................................................................... 13, 14, 15

*In re Automotive Parts Antitrust Litigation*,
   No. 12-md-02311, 2022 WL 4385345 (E.D. Mich. Sept. 22, 2022) ........................................ 11

*In re Broadwing, Inc. ERISA Litig.*,
   252 F.R.D. 369 (S.D. Ohio 2006) ............................................................................. 8

*In re Cincinnati Gas & Elec. Co. Sec. Litig.*,
   643 F. Supp. 148 (S.D. Ohio 1986) ........................................................................ 11

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ................................ 15, 18

*In re Nasdaq Market–Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y.1997) ............................................................................... 9

*In re Prandin Direct Purchaser Antitrust Litig.*,
   No. 2:10-CV-12141-AC-DAS, 2014 WL 8335997 (E.D. Mich. Oct. 2, 2014) ......................... 9

*In re Skechers Toning Shoe Prod. Liab. Litig.*,
   No. 3:11-MD-2308-TBR, 2012 WL 3312668 (W.D. Ky. Aug. 13, 2012) .............................. 9

*Miracle v. Bullitt Cnty., Ky.*,
   No. CIV.A. 05-130-C, 2008 WL 3850477 (W.D. Ky. Aug. 15, 2008) ................................. 10

*Pelzer v. Vassalle*,
   655 F. App'x 352 (6th Cir. 2016) ........................................................................... 12

*Roland v. Convergys Customer Mgmt. Grp. Inc.*,
   No. 1:15-CV-00325, 2017 WL 977589 (S.D. Ohio Mar. 10, 2017).................................... 9

*Savidge v. Pharm-Save, Inc.*,
   No. 3:17-CV-00186-TBR, 2017 WL 5986972 (W.D. Ky. Dec. 1, 2017) .............................. 10

*Savidge v. Pharm-Save, Inc.*,
   No. 3:17-CV-186-CHB, 2020 WL 265206 (W.D. Ky. Jan. 17, 2020) ................................. 10

*Savidge v. Pharm-Save, Inc.*,
   No. 3:17-CV-00186-CHB, 2021 WL 3076786 (W.D. Ky. July 1, 2021) (granting leave to file
   second amended ......................................................................................... 10

*Senter v. Gen. Motors Corp.*,
   532 F.2d 511 (6th Cir.1976) ............................................................................ 13, 14

*Thacker v. Chesapeake Appalachia, LLC*,
   259 F.R.D. 262 (E.D. Ky. 2009) ........................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ........................................................................................ 13

*Wal-Mart Stores, Inc. v. Visa USA Inc.*,
   396 F.3d 96 (2d Cir. 2005) .................................................................................. 19

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) .................................................................................. 19

*Willis v. Big Lots, Inc.*,
   No. 2:12-CV-604, 2017 WL 1063479 (S.D. Ohio Mar. 17, 2017) ......................... 15

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532(6th Cir. 2012) ............................................................................... 16

## Statutes

Cal. Bus. & Prof. Code §17200 .................................................................................. 3
Cal. Civ. Code § 56 .................................................................................................... 3
Cal. Civ. Code § 1798.100 .......................................................................................... 3
California Constitution, Article I, Section 1 ................................................................. 3
New York General Business Law §349 ......................................................................... 3

## Rules

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 14
Fed. R. Civ. P. 23(b)(3) ............................................................................ 12, 14, 15, 16
Fed. R. Civ. P. 23(c)(2)(A) ....................................................................................... 19
Fed. R. Civ. P. 23(e) ............................................................................................ 8, 18
Fed. R. Civ. P. 23(e)(1) ............................................................................................ 18
Fed. R. Civ. P. 23(e)(2) ............................................................................................ 19
Fed. R. Civ. P.23(c)(2)(B) .................................................................................... 18, 19
Fed. Rule Civ. Proc. 23(b)(3)(D) .............................................................................. 15
Rule 23 ............................................................................................................... 18, 19
Rule 23(a) ................................................................................................................ 14
Rule 23(a)(1) ............................................................................................................ 12
Rule 23(a)(2) ....................................................................................................... 13, 15
Rule 23(a)(3) ............................................................................................................ 13
Rule 23(h)(1) ............................................................................................................ 18

## Other Authorities

ANNOTATED MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.662 (2012) ................ 8

Plaintiffs Jolynne Christiansen, John Doe, Evelyn Harris, Daniel McCormick, Joan Migliaccio, Michelle Mulanax, Gary Rowe, David Yancey, and Kelly Rosal, and the proposed Settlement Class have reached a nationwide class action settlement with Defendant Parker Hannifin Corporation ("Defendant" or "Parker Hannifin") for a $1,750,000 non-reversionary common fund to resolve claims arising from the March 2022 Data Incident that impacted approximately 115,843 of its current and former employees (the "Data Incident"). *See* Settlement Agreement attached as **Exhibit 2** to the Unopposed Motion for Preliminary Approval of Class Action Settlement; *see also* Declaration of Terence R. Coates in Support of Preliminary Approval of Class Action, at ¶ 5 (**Exhibit 3**) The Data Incident involved the access, exfiltration, and posting online of full names, Social Security numbers, dates of birth, addresses, driver's license numbers, U.S. passport numbers, financial account information (bank account and routing numbers), online account usernames and passwords, health insurance plan member ID numbers, and dates of coverage. ECF No. 14, Consolidated Class Action Complaint ("CAC") at ¶ 6.

The settlement provides significant relief and lies well within the range of reasonableness necessary for this Court to grant preliminary approval of the class action settlement under Rule 23(e). The Court should, therefore, preliminarily approve the settlement, direct that notice be sent to all Class Members in the reasonable manner outlined below, set deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Final Approval and petition for the class representative service award, attorneys' fees, and expenses, and set a Final Approval Hearing date.

## I.  BACKGROUND

### A.  History of Litigation

This is a nationwide consumer class action brought by Plaintiffs on behalf of themselves and a nationwide class of "all persons Defendant identified as being among the individuals

impacted by a Data Incident, including all who were sent a notice of the Data Incident."

The case arises from the alleged compromise of personal identifying information ("PII") and protected health information ("PHI") (PII and PHI are collectively referred to as "Private Information") as a result of a March 2022 ransomware attack experienced by Parker Hannifin. Plaintiffs and Class Members include current and former employees of Defendant and its acquired entities, their dependents, and other individuals affiliated with Defendant whose Private Information was compromised in the Data Incident. In response to the Data Incident, Defendant sent a Notice Letter ("Notice Letter") to each impacted individual providing a description of the type of Private Information involved, and explaining that the data was exfiltrated from Parker Hannifin's systems and held for ransom. Plaintiffs allege that the cybercriminals posted Plaintiffs and Class Members' Private Information on a public website on April 20, 2022, CAC ¶6, and that the website has been accessed over 17,000 times. *Id.* at ¶6.

In response, on May 20, 2022, Plaintiff Joan Migliaccio filed the first complaint against Defendant in this Court for claims arising from the Data Incident. Subsequent related Complaints were later filed, and on June 15, 2022, the Court entered an order consolidating the related actions. On July 20, 2022, the Court also entered an Order appointing Terence R. Coates (Markovits, Stock & DeMarco, LLC) and Joseph M. Lyon (The Lyon Firm) as Interim Class Counsel and Marc Dann (DannLaw) as Interim Liaison Counsel for all Plaintiffs. ECF 10.

In their Consolidated Complaint, filed July 15, 2022, Plaintiffs alleged, individually and on behalf of the Class, that as a direct result of the Data Incident, they suffered numerous actual and concrete injuries and would likely suffer additional harm into the future. Plaintiffs' claims for damages and remedies included the following categories of harms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of

productivity incurred mitigating the imminent risk of identity theft; (d) loss of time and loss of productivity heeding Defendant's warnings and following its instructions in the Notice Letter; (d) financial costs incurred due to actual identity theft; (e) the cost of future identity theft monitoring for the Class; (f) loss of time incurred due to actual identity theft; (g) loss of time and annoyance due to increased targeting with phishing attempts and fraudulent robo-calls; (h) deprivation of value of their PII;  and (i) statutory damages. CAC at ¶8.

Plaintiffs, individually and on behalf of other members of the Class asserted claims for (i) negligence; (ii) negligence *per se*; (iii) breach of implied contract; (iv) unjust enrichment; (v) declaratory relief; (vi) violations of the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq*.; (vii) violations of the Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq*.; (viii) invasion of privacy under the California Constitution, Article I, Section 1; (ix) violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq*.; and (x) violations of the New York General Business Law §349. Plaintiffs also sought injunctive relief, declaratory relief, monetary damages, and all other relief as authorized in equity or by law. *Id*. at ¶10.

### B.  Negotiations and Settlement

The settlement is the result of months of arms'-length negotiation and hard bargaining. Before entering into this Settlement Agreement, Defendant produced informal discovery that addressed the manner and mechanism of the Data Incident, the number of impacted individuals broken down by states, notice program, the ransom response, and security enhancements following the Data Incident. Additional formal discovery was stayed upon the Parties' request pending the completion of mediation. Coates Declaration, ¶ 6. Through the informal discovery process, Plaintiffs were able to properly evaluate damages on a class-wide basis. *Id*. ¶ 8. On December 8,

2022, the parties engaged in a full day mediation session with Bennett Picker of Stradley Ronon Stevens & Young, LLP – a mediator with substantial experience handling data breach class action mediations. While no settlement was reached that day, the negotiations continued for several weeks until a resolution was reached through a mediator's proposal. *Id*. at ¶ 5.

This settlement would resolve all claims related to the Data Incident on behalf of the Class. *See generally,* Settlement Agreement. Defendant has provided access to confirmatory discovery regarding the number of Class Members broken down by category (*e.g.*, current customer, former customer, current employee, former employee, etc.) and state of residence, the facts and circumstances of the Data Incident and Defendant's response thereto, and the improvements made to protect Private Information. *See id.* at ¶ 2.4.

### C.  Summary of Settlement Terms

Under the proposed settlement, Defendant will pay $1,750,000 to establish the Settlement Fund to be distributed to Class Members under the Settlement Agreement. The settlement defines the Class as follows:

> **All natural persons residing in the United States who were sent a Notice letter notifying them that their Private Information was compromised in the Data Incident.**[1]

*See* Settlement Agreement, Introduction. It is estimated that the Class is comprised of approximately 115,843 individuals nationwide. Under the Proposed Settlement, Defendant agrees to pay a total of $1,750,000 into the Settlement Fund, which will be used to make payments to Class Members and to pay the costs of Settlement Administration, attorneys' fees and expenses, and a Service Award to Plaintiff. *See id.* at ¶¶ 1.34, 8.1. Furthermore, in connection with the parties' mediation, Parker provided Plaintiffs with informal discovery regarding the Incident and

---

[1] "Data Incident" is defined as the March 2022 cybersecurity incident against Parker Hannifin giving rise to the action.

the security business practice changes that Parker has made to improve Parker's information security posture following the Data Incident. In connection with final approval of the Settlement, and in conjunction with Class Counsel, Parker will submit a declaration to the Court attesting to these security enhancements.

### 1. Compensation

The Settlement Fund will provide the reimbursement of up to $5,000 per claimant for documented monetary losses that are fairly traceable to the Data Incident. Such monetary losses may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees for attorneys, accountants, and credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs incurred on or after the Data Incident, through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id*. at ¶ 2.1(b).

Further, a Claim Form for reimbursement for time spent remedying issues related to the Data Incident can be submitted for up to four (4) total hours at a rate of $25 per hour capped at $100 ("Lost-Time Claims"). No documentation is required with Lost-Time Claims, but Class Members must attest that the time claimed was actually spent as a result of the Data Incident. *Id*. at ¶ 2.1(c).

Settlement Class Members who were residents of California at the time of the Data Incident can also submit a Claim Form for an additional benefit of $100 per Settlement Class Member as compensation for their statutory claim(s) under California law ("California Claims"). To be eligible to receive compensation for California Claims, Settlement Class Members must attest, under penalty of perjury, they were residents of California at the time of the Data Incident. To claim this $100 benefit, Class Members need not submit any documentation. *Id*. at ¶ 2.1(d).

Class Members can submit a Claim Form for documented incident of fraud for $250 per incident capped at $5,000 per individual for verified and documented incidents of fraud ("Verified Fraud"). Verified Fraud Claims will include, without limitation, any verified incident regardless of reimbursement. This may include fraudulent bank or credit card charges, tax filings, opening of bank and/or credit accounts, unemployment filings, etc. Class Members with Verified Fraud Claims must submit documentation and attestation supporting their claims. *Id.* at ¶ 2.1(e).

Finally, the remainder of the Settlement Fund will be used to pay $50 to each Class Member submitting a valid claim under the settlement. This $50 cash payment will be increased pro rata or decreased pro rata after the payment of any documented monetary losses as identified below, and for attorneys' fees and expenses, the proposed $3,500 Class Representative Service Award, and the costs of Settlement Administration. Settlement Agreement, at ¶ 2.1(a).

Any attorneys' fees, expenses, a Service Award to Plaintiffs, and the cost of Settlement Administration, will also be paid from the Settlement Fund. *Id.* at ¶ 2.2. Costs associated with these data security measures shall be paid by Defendant, separate and apart from the Settlement Fund amount.

### 2. Scope of the Release

In exchange for consideration above, Class Members who do not timely and validly exclude themselves from the settlement will be deemed to have released Defendant from claims arising from or related to the Data Incident at issue in this litigation. Settlement Agreement, ¶ 6.1.

### 3. The Notice and Administration Plans

Under the Settlement Agreement, Class Counsel, with Defendant's approval, has selected Kroll Settlement Administration, LLC ("Kroll") to be the Settlement Administrator, who will provide the Class with notice and administer the claims. Defendant, with the assistance of the Settlement Administrator, shall create a "Class List" of all names, emails, and/or mailing addresses

of potential Settlement Class Members, to the extent such information was contained in the original list used to send to Class Members notice about the Data Incident. *See* Settlement Agreement, Settlement Timeline. Class Counsel connected with several settlement administrators before selecting Kroll as the appropriate settlement administrator for this case. Coates Declaration, ¶ 7. Class Counsel's decision, with Defendant's consent, to select Kroll was based on the scope of settlement administration Kroll proposed balanced against the cost for such services. *Id*. Class Counsel understands that any settlement administration costs and expenses will be deducted from the Settlement Fund and endeavored to select the settlement administrator for this case offering the best service for the best price. *Id*.

The Settlement Administrator will first provide a written notice to each Class Member for whom valid mailing addresses are known and/or an email notice to Class Members for whom valid email addresses are known. Settlement Agreement, ¶ 1.36, 3.2. The Short Form Notice will be sent in a form substantially similar to that in Exhibit D to the Settlement Agreement, and will clearly and concisely inform Class Members of the amount of the Settlement Fund, that they may do nothing and be bound by the settlement, object, exclude themselves by completing the exclusion form and not be bound by the settlement, or make a claim by completing and returning a claim form and be bound by the settlement. *Id*. The Settlement Administrator will also publish a Long Form Notice and Claim Form on the Settlement Website established and administered by the Settlement Administrator, which shall contain information about the settlement, including copies of the notice, the Settlement Agreement, and all court documents related to the settlement. *Id*. The Settlement Administrator will also be responsible for accounting for all of the claims made and exclusions requested, determining eligibility, and disbursing funds from the Settlement Escrow Account directly to Class Members. *Id*. at ¶ 9.1. Class Counsel was able to work with Kroll to get

Kroll to agree to cap its quote for Settlement Administration at $180,000.00 for this case. Coates Declaration, at ¶ 7.

### 4. Attorneys' Fees, Costs, Expenses, and Service Awards

Plaintiff will also separately seek an award of attorneys' fees not to exceed 1/3 of the Settlement Fund (*i.e*., $583,333.33), and for reimbursement of Class Counsel's reasonable costs and litigation expenses not to exceed $15,000, which shall be paid from the Settlement Fund. *Id*. at ¶¶ 7.2. The motion will be filed at least fourteen (14) days before Objection/Opt-Out Deadline. The Settlement Agreement further provides for a payment of $3,500 each to Plaintiffs as a Service Award for their services in representing the Class. *Id*. at ¶ 7.3.

## II. LEGAL STANDARD

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Fed. R. Civ. P. 23(e) provides three steps for approving a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006); *see also Amos v. PPG Indus.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015). Plaintiffs here request that the Court preliminarily approve the proposed settlement.

During the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.662 (2012). Instead, the Court should evaluate only whether the proposed settlement

"appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland v. Homeservs. of Am., Inc.*, No. 3:05-CV-612-R, 2009 WL 2525587, at *2 (W.D. Ky. Aug. 17, 2009) (citing *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.1997)).[2] The Court should preliminarily determine that the settlement is sufficiently fair, reasonable, and adequate so that it can "direct the preparation of notice of certification, proposed settlement, and date of the final fairness hearing" to all those affected by it. *In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012).[3]

## III. ARGUMENT

### A. The Proposed Settlement Satisfies the Standard for Preliminary Approval.

#### 1. The Proposed Settlement was reached after serious, informed, and arm's-length negotiations.

Arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of fair settlements. *See, e.g., Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable").

---

[2] *See also Bautista v. Twin Lakes Farms, Inc.*, No. 104-CV-483, 2007 WL 329162, at *4 (W.D. Mich. Jan. 31, 2007) ("The court's role in reviewing settlements must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement taken as a whole is fair, reasonable, and adequate to all concerned.") (internal quotes omitted).

[3] *See also In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-CV-12141-AC-DAS, 2014 WL 8335997, at *3 (E.D. Mich. Oct. 2, 2014) ("The ultimate approval of a class action settlement requires a finding that the settlement is fair, adequate, and reasonable.").

In this case, the settlement was the result of intensive, arm's-length negotiations between attorneys who have extensive class action litigation experience and who have knowledge of the legal and factual issues of this case in particular. Settlement negotiations in this case took place over the course of several months and involved a mediation session and weeks of follow-up discussions with an experienced mediator. Coates Declaration, ¶ 5. No collusion or illegality existed during the settlement process. *Id*. at ¶ 5.  The Parties' counsel support the settlement as fair and reasonable, and all certify that it was reached at arms'-length. *Id*.

### 2. The proposed Settlement falls within the range of reasonableness and warrants issuance of notice and a hearing on final approval of settlement.

Although Plaintiff believes that the claims asserted in the Class Action are meritorious and the Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Class uncertain. The fairness and adequacy of the settlement is underscored by consideration of the obstacles that the Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *See Amos*, 2015 WL 4881459, at *1 ("In general, most class action are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (the "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").[4]

Despite the risks involved with further litigation, the Settlement Agreement provides

---

[4] Courts within this District have experienced the protracted litigation often required to simply get past the pleading stage in similar actions. *See, e.g., Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-TBR, 2017 WL 5986972, at *13 (W.D. Ky. Dec. 1, 2017) (granting in part and denying in part motion to dismiss complaint in data breach action involving employee PII); *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-186-CHB, 2020 WL 265206, at *7 (W.D. Ky. Jan. 17, 2020) (dismissing all additional claims brought by the plaintiffs in amended complaint); *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-CHB, 2021 WL 3076786, at *1 (W.D. Ky. July 1, 2021) (granting leave to file second amended complaint over defendant's objection).

outstanding benefits. Class Members have the ability to claim documented losses up to $5,000.

### 3.  The Proposed Settlement Has No Obvious Deficiencies

There are no grounds to doubt the fairness of the proposed settlement or other obvious deficiencies, such as unduly preferred treatment of Plaintiffs or excessive attorney compensation. *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 271 (E.D.  Ky. 2009). Plaintiffs, like all other Class Members, will receive their settlement benefit in accordance with a claims process that will be presented to the Court for approval.

The matter of attorneys' fees and payment of expenses, as well as any Service Award for Plaintiffs, will be determined by the Court. Proposed Class Counsel has agreed to limit their attorneys' fee request to one-third of the Common Fund ($583,333.33), which is well within the range of fees awarded within the Sixth Circuit. *See In re Cincinnati Gas & Elec. Co. Sec. Litig*., 643 F. Supp. 148, 150 (S.D. Ohio 1986) (in the Sixth Circuit, attorneys' fees "typically … range from 20% - 50%"); *In re Automotive Parts Antitrust Litigation*, No. 12-md-02311, 2022 WL 4385345, at *2 (E.D. Mich. Sept. 22, 2022) (a fee request of 1/3 of the class action settlement fund "is within the range of fee awards made by courts in this Circuit."); *Walker v. Nautilus, Inc.*, No. 2:20-cv-3414-EAS (S.D. Ohio) (awarding attorneys' fees of 1/3 of the $4.25 million common fund); *Bechtel v. Fitness Equipment Services, LLC*, No. 1:19-cv-726-KLL (S.D. Ohio) (awarding attorneys' fees of 1/3 of the $3.65 million common fund); *Fields v. KTH Parts Industries, Inc.*, No. 3:19-cv-8, 2022 WL 3223379, at * 7-8 (S.D. Ohio Aug. 9, 2022) (finding that attorneys' fees of 1/3 the class action settlement fund are "normal"); *Davis v. Omnicare, Inc.*, No. 5-18-CV-142-REW, 2021 WL 1214501, at *11 (E.D. Ky. Mar. 30, 2021) (preliminarily approving attorneys' fees of 1/3 of the class action settlement fund); *see also* Coates Declaration, at ¶ 16. Importantly, here, Class Counsel's fees were not negotiated until after Class Counsel agreed upon Class

11

Members' relief. Settlement Agreement, ¶ 7.5. Plaintiffs further seek a modest Service Award of Three-Thousand Five Hundred Dollars ($3,500.00) each for their active involvement in this litigation. Because Plaintiffs and Class Counsel will move for an award of costs, fees, expenses, and the Plaintiffs service awards at least 14 days before the objection and opt out deadlines, the Court will have the ability to consider these payments before granting final approval.

For the foregoing reasons, the Court should find that the proposed settlement is fair, reasonable, and adequately protects the interests of the proposed Class.

**B. Certification of the Settlement Class is Appropriate.**

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S 591, 620 (1997). For the Court to certify a class, Plaintiff must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). *See Pelzer v. Vassalle*, 655 F. App'x 352, 363 (6th Cir. 2016). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. Here, Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3), which provides that certification is appropriate where "the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).

**1. Numerosity**

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all Class Members is impracticable. Fed. R. Civ. P. 23(a)(1). "There is no specific number below which class action relief is automatically precluded. Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the

case." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir.1976); *see also In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement"); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 105 F.R.D. 506, 508 (S.D. Ohio 1985) (certifying a 23-person class).  Here, the 115,843 Class Members satisfy the numerosity element.

### 2.  Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* (Internal quotation marks and citation omitted).

Here, Plaintiffs' claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' Private Information. Resolution of that inquiry revolves around evidence that does not vary from class member to class member, and so can be fairly resolved—at least for purposes of settlement—for all Settlement Class Members at once.

### 3.  Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher*

*v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.*; *see also Am. Med. Sys.*, 75 F.3d at 1082 (same). Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the Class Members represented.

Here, the claims all involve Defendant's conduct toward the Class Members, and Plaintiffs' and the Class's claims are based on the same legal theories. Thus, Plaintiffs' claims are typical of those of the claims of the Class, and they are appropriate Settlement Class Representatives.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria: (1) the "representative must have common interests with unnamed members of the class," and (2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 594.

Representative Plaintiffs have no conflicts with the Settlement Class and have participated actively in the case. Coates Declaration, ¶ 11. Moreover, Class Counsel have significant experience in class and complex litigation, including more than 100 data breach class actions in state and federal courts throughout the country. *Id*. at ¶ 13.

### 5. Certification under Rule 23(b)(3) is appropriate.

Class certification under Rule 23(b)(3) has two components: predominance and superiority. "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2)

commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *6 (W.D. Ky. Dec. 22, 2009) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084 (6th Cir. 1996)). When assessing these components, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 (on a request for settlement-only class certification, "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

The Sixth Circuit has explained that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re WhirlpoolCorp. Front-Loading Washer Prods. Liab. Litig.*,722 F.3d 838, 860 (6th Cir. 2013). Also, the court considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *Willis v. Big Lots, Inc.*, No. 2:12-CV-604, 2017 WL 1063479, at *2 (S.D. Ohio Mar. 17, 2017) (citing Fed. R. Civ. P. 23(b)(3)).

### a. *Common Questions of Law and Fact Predominate.*

In this case, the common factual and legal questions all cut to the issues "at the heart of the

litigation."  Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Settlement Class Member. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied.

### b. A Class is the Superior Method of Adjudicating this Case.

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). The Agreement provides members of the Settlement Class with quick, simple, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Class Member who is dissatisfied with the settlement to object to it or to request exclusion from the Class. Moreover, the cost of litigating each Class Member's case on an individual basis would be substantial for each Class Member; the most reasonable and economically feasible method of litigating and resolving these hundreds of claims is through the class device. *See Young v. Nationwide Mut. Ins. Co.*,693 F.3d 532, 545(6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." (internal quotations omitted)).

Adjudicating individual actions here is impracticable. The amount in dispute for individual class members is too small, the technical issues are too complex, and the required expert testimony and document review would be far too costly.  In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Settlement Class Members' claims

16

would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings.  Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial.  *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial").

### C. The Court should appoint the proposed Class Representatives, Class Counsel, and Class Action Administrator.

Plaintiffs Jolynne Christiansen, John Doe, Evelyn Harris, Daniel McCormick, Joan Migliaccio, Michelle Mulanax, Gary Rowe, Kelly Rosal, and David Yancey seek to be appointed as Class Representatives for the Settlement Class. As discussed above, Plaintiffs have cooperated with counsel, provided informal discovery, and assisted in the preparation of the Complaints. Moreover, Plaintiffs are committed to continuing to vigorously prosecute this case, including overseeing the notice program, and defending the Settlement Agreement against any objectors, all the way through the Court's final approval. Because they are adequate representatives, the Court should appoint them as class representatives.

Also, for the reasons previously discussed in Plaintiffs' Motion for Appointment of Interim Class Counsel (ECF 13), the Court should designate Terence R. Coates (Markovits, Stock & DeMarco, LLC) and Joseph M. Lyon (The Lyon Firm) as Settlement Class Counsel.

Finally, the parties have agreed that Kroll Settlement Administration, LLC ("Kroll") shall act as Settlement Administrator. Kroll and its principals have a long history of successful settlement administrations in class actions. Kroll Declaration, at ¶ 2 (**Exhibit 4** to Unopposed Motion for Preliminary Approval of Class Action Settlement).  The Court should appoint Kroll as Settlement Administrator here.

**D.  The proposed form and manner of notice is reasonable and should be approved.**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P.23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct.2140, 2150 (1974). To satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *In re Countrywide*, 2009 WL 5184352, at *12 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)).

The Notice Plan set forth in the Agreement provides the best notice practicable under the circumstances. The Settlement Notice will be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified with reasonable effort from Parker Hannifin's records, and through databases tracking nationwide addresses and address changes. In addition, Kroll will administer the Settlement Website containing important and up-to-date information about the settlement. Kroll Declaration, at ¶ 11.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Here, the proposed Notice Plan satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Class Counsel will apply to the Court for attorneys' fees of no more than 1/3 of the common fund, plus reimbursement of litigation costs and expenses up to $15,000. The proposed Notice Plan complies with Rule 23 and due process because it informs Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Settlement Class, the claims asserted, and the benefits offered; (3) the binding

18

effect of a judgment if a Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that one may make an appearance through counsel; (5) information regarding the Class Representative's request for a service award; (6) information regarding the payment of proposed Class Counsel fees; and (7) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

Thus, the Notice Plan and Settlement Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The manner of notice, which includes individual notice by mail or email to all those who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004); *see also Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1982). Thus, the Notice Plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

### E.  The Court Should Provide a Schedule Leading Up to the Fairness Hearing

Plaintiffs request that the Court set a schedule, leading up to a Fairness Hearing, that would include, *inter alia*, deadlines for notice to Class Members for Class Members to object to the settlement, to opt out of the settlement, and to make claims under the settlement; and deadlines for the filing of papers in support of final approval, and in support of attorneys' fees and expenses. A proposed schedule is included in the proposed Preliminary Approval Order. At the Fairness Hearing, the Court may hear all evidence necessary to make its final evaluation of the settlement. *See* Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer arguments in support of final approval. In addition, Class Members who have properly objected may be heard.

## CONCLUSION

Plaintiffs respectfully ask the Court to enter an Order: (1) certifying the Class for purposes of settlement; (2) appointing Plaintiffs as representatives of the Class; (3) appointing the undersigned counsel as Class Counsel; (4) granting preliminary approval of the proposed settlement; (5) approving the proposed form and manner of notice to the Class; (6) directing the notice to the Class be disseminated by the Settlement Administrator; (7) establishing a deadline for Class members to request exclusion from the Settlement Class or file objections to the settlement; and (8) setting the proposed schedule for completion of further settlement proceedings, including scheduling the Final Approval Hearing. A proposed Order Granting Preliminary Approval of Class Action Settlement is attached as **Exhibit 1** to the Unopposed Motion for Preliminary Approval of Class Action Settlement.

Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates
tcoates@msdlegal.com
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700

Joseph M. Lyon
jlyon@thelyonfirm.com
**THE LYON FIRM**
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333

*Interim Co-Lead Counsel*

Marc E. Dann
notices@dannlaw.com
**DANNLAW**
15000 Madison Avenue
Lakewood, OH 44107

Telephone: (513) 381-2333

*Interim Liaison Counsel*

*Attorneys for Plaintiffs and the proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 10, 2023, I served a copy of the foregoing via electronic filing in the ECF system.

<u>*/s/ Terence R. Coates*</u>
Terence R. Coates