## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## NORTHERN DIVISION

JOLYNNE CHRISTIANSEN, JOHN DOE,   )
EVELYN HARRIS, DANIEL   )
MCCORMICK, JOAN MIGLIACCIO,   )
MICHELLE MULANAX, GARY ROWE,   )
DAVID YANCEY, and KELLY ROSAL,   )
*individually and on behalf of all others*   )
*similarly situated*,   )
   )
       Plaintiffs,   )
   )
v.   )
   )
PARKER HANNIFIN CORPORATION,   )
   )
       Defendant.

Case No. 1:22-cv-835

Judge Hon. Dan Aaron Polster

**CLASS ACTION**

---

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated March 10, 2023, is made and entered into by and among the following Settling Parties (as defined below): Jolynne Christiansen, John Doe, Evelyn Harris, Daniel McCormick, Joan Migliaccio, Michelle Mulanax, Gary Rowe, Kelly Rosal, and David Yancey ("Plaintiffs"), and Parker-Hannifin Corporation ("Defendant" or "Parker" and, together with Plaintiffs, the "Parties" or "Settling Parties"). The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to resolve, discharge, and settle the Released Claims and this Litigation (as defined below), upon and subject to the terms and conditions set forth below.

### I.    INTRODUCTION

This is a nationwide consumer class action brought by Plaintiffs on behalf of themselves and a class of "all persons Defendant identified as being among the individuals impacted by a

1

(Data Incident), including all who were sent a notice of the [Data Incident.]" (*See* Plaintiffs' Consolidated Class Action Compl. ("CAC"), ECF No. 14, ¶ 175.)

The case arises from the alleged compromise of personal identifying information ("PII") and protected health information ("PHI") as a result of a March 2022 ransomware attack experienced by Parker (the "Data Incident") (PII and PHI are referred to collectively as "Private Information."). Plaintiffs and Class Members include current and former employees of Defendant and its acquired entities, their dependents, and other individuals affiliated with Defendant whose Private Information was compromised in the Data Incident. In response to the Data Incident, Defendant sent a Notice Letter ("Notice Letter") to each impacted individual providing a description of the type of Private Information involved, which may have potentially included: full names, Social Security numbers, dates of birth, addresses, driver's license numbers, U.S. passport numbers, financial account information (bank account and routing numbers), online account usernames and passwords, health insurance plan member ID numbers, and dates of coverage.

In response, on May 20, 2022, Plaintiff Joan Migliaccio filed the first complaint against Defendant in this Court for claims arising from the Data Incident. Subsequent related Complaints were later filed, and on June 15, 2022 the Court entered an order consolidating the related actions. On July 20, 2022, the Court also entered an order appointing Terence R. Coates (Markovits, Stock & DeMarco, LLC) and Joseph M. Lyon (The Lyon Firm) as Interim Class Counsel and Marc Dann (DannLaw) as Interim Liaison Counsel for all Plaintiffs.

In their CAC, filed July 15, 2022, Plaintiffs alleged individually and on behalf of the Class that, as a direct result of the Data Incident, Plaintiffs and Class Members suffered numerous injuries and would likely suffer additional harm into the future. Plaintiffs' claims for alleged damages and remedies included the following categories of harms: (a) invasion of privacy; (b)

financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft (d) loss of time and loss of productivity heeding Defendant's warnings and following its instructions in the Notice Letter; (d) financial costs incurred due to actual identity theft; (e) the cost of future identity theft monitoring for the Class; (f) loss of time incurred due to actual identity theft; (g) loss of time and annoyance due to increased targeting with phishing attempts and fraudulent robo-calls; (h) deprivation of value of their PII;  and (i) statutory damages.

Plaintiffs, individually and on behalf of other members of the Class, asserted claims for (i) negligence; (ii) negligence *per se*; (iii) breach of implied contract; (iv) unjust enrichment; (v) declaratory relief; (vi) violations of the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq*.; (vii) violations of the Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq*.; (viii) invasion of privacy under the California Constitution, Article I, Section 1; (ix) violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.; and violations of the New York General Business Law § 349. Plaintiffs also sought injunctive relief, declaratory relief, monetary damages, and all other relief as authorized in equity or by law.

Before entering into this Settlement Agreement, and in response to informal discovery requests for settlement purposes from Plaintiffs, Defendant produced informal discovery that addressed the manner and mechanism of the Data Incident, the number of impacted individuals broken down by state, Defendant's notice program and incident response, and security enhancements implemented by Defendant following the Data Incident. Additional formal discovery was stayed upon the Parties' request pending the completion of mediation.

## II. MEDIATION

On December 8, 2022, the parties engaged in a full-day mediation session with Ben Picker (Stradley, Ronon, Stevens & Young, LLP). Mr. Picker is a well-regarded mediator with substantial experience handling data breach class action mediations. A resolution was not reached. Following a status conference with the Court, negotiations continued, and the Parties were able to reach a resolution through a mediator's proposal. The agreed resolution or settlement is memorialized in this Settlement Agreement.

Pursuant to the terms identified below, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against Defendant and the Released Persons (as defined below) relating to the Data Incident and this Litigation, by and on behalf of Plaintiffs and Settlement Class Members (as defined below).

## III. PLAINTIFFS' CLAIMS AND BENEFITS OF SETTLING

Plaintiffs believe the claims asserted in the Litigation, as set forth in their CAC against Defendant, have merit. Plaintiffs and Interim Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against Defendant through motion practice, trial, and potential appeals. Plaintiffs and Interim Class Counsel have also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation, especially in complex class actions. Interim Class Counsel are highly experienced in class action litigation and, in particular, data breach and privacy litigation, and have previously served as lead counsel in other Ohio data breach class actions through final approval. Plaintiffs and Interim Class Counsel have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class Members.

IV.    **DENIAL OF WRONGDOING AND LIABILITY**

Defendant denies each and all of the claims and contentions alleged against it in the CAC. Defendant denies all charges of wrongdoing or liability as alleged, or which could be alleged. Nonetheless, Defendant has concluded that further conduct of litigation would be protracted and expensive, and that it is desirable that this matter be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. Defendant has considered the uncertainty and risks inherent in any litigation and in this matter. Defendant has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

V.    **TERMS OF SETTLEMENT**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs, individually and on behalf of the Settlement Class Members, Proposed Settlement Class Counsel, as set forth in the signature block below, and Defendant that, subject to the approval of the Court, the Released Claims (as defined below) shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties and the Settlement Class Members, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

1.    **Definitions**

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1    "Administration Fees" shall mean the fees, costs and other expenses incurred for Settlement Administration, as defined below, and includes Costs of Settlement Administration.

1.2    "Agreement" or "Settlement Agreement" means this agreement.

1.3     "CAFA Notice" means a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. Sec. 1711, et seq. ("CAFA"), to be served upon the appropriate State official in each State where a Settlement Class Member resides and the appropriate federal official. Costs for preparation and issuance of the CAFA Notice will be paid by Defendant.

1.4     "Claim Form" means the form that will be used by Settlement Class Members to submit a Settlement Claim to the Settlement Administrator and that is substantially in the form as shown in **Exhibit A** to this Settlement Agreement.

1.5     "Claims Deadline" means the postmark and/or online submission deadline for Settlement Claims pursuant to ¶ 2.1, which shall be 90 days after the Notice Date (as defined below).  The Claims Deadline shall clearly be set forth in the order granting Preliminary Approval of the Settlement, as well as in the Notice and on the Claim Form.

1.6     "Costs of Settlement Administration" means all actual costs associated with or arising from Settlement Administration.

1.7     "Court" means the United States District Court for the Northern District of Ohio, United States District Judge Dan Aaron Polster.

1.8     "Data Incident" means the ransomware attack perpetrated against Defendant between March 11 and 14, 2022, that involved an unauthorized third-party accessing Defendant's network and computer systems and potentially accessing the Private Information of Plaintiffs and the Settlement Class Members (as defined below).

1.9     "Dispute Resolution" means the process for resolving disputed Settlement Claims as set forth in this Agreement.

1.10    "Effective Date" shall mean the date when the Settlement Agreement becomes Final, which is 31 days after the Court's grant of the Final Approval Order assuming no appeals have been filed. If an appeal is filed, the Effective Date will be 31 days from when the appeal is decided and a Judgment is entered in this case.

1.11    "Escrow Account" means the account opened by the Settlement Administrator.

1.12    "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the Court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fees award or Service Awards made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.13    "Final Approval Order' is the order through which the Court grants final approval of class action settlement and finds that this settlement is fair, reasonable, and adequate.

1.14    "Judgment" means a judgment rendered by the Court.

1.15    "Litigation" means this consolidated case, Case No. 1:22-cv-835, pending in the United States District Court for the Northern District of Ohio against Defendant.

1.16    "Long Notice" means the long-form notice of settlement to be posted on the Settlement Website (as defined below), substantially in the form as shown in **Exhibit B** to this Settlement Agreement.

1.17    The "Notice Date" means 30 days after the entry of the Preliminary Approval Order, which is the date that Notice will be sent to Settlement Class Members.

1.18    "Objection Date" means the date by which Settlement Class Members must file with the Court through the Court's electronic case filing ("ECF") system and mail to Class Counsel and counsel for Defendant their objection to the Settlement for that objection to be effective.  The postmark date shall constitute evidence of the date of mailing for these purposes.  The Objection Date shall be 60 days after the Notice Date.

1.19    "Opt-Out Date" means the date by which Settlement Class Members must mail to the Settlement Administrator their requests to be excluded from the Settlement Class for that request to be effective.  The postmark date shall constitute evidence of the date of mailing for these purposes.  The Opt-Out Date shall be 60 days after the Notice Date.

1.20    "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.21    "Plaintiffs" and "Class Representatives" mean Jolyyne Christiansen, Evelyn Harris, John Doe, Daniel McCormick, Joan Migliacio, Michelle Mulanax, Gary Rowe, Kelly Rosal, and David Yancey.

1.22    "Plaintiffs' Counsel" shall mean Marc E. Dann (DannLaw), Gary Klinger (Milberg Coleman Bryson Phillips Grossman, PLC), Thomas Zimmerman, Jr. (Zimmerman Law Offices, P.C.), Jeffrey Goldenberg (Goldenberg Schneider), Charles Schaffer (Levin Sedran & Berman),

Nathan Prosser (Hellmuth & Johnson, PLLC), Alan Mansfield (Whatley Kallas, LLP), April Strauss, (April Straus, PC), and William J. Doyle (Doyle, APC).

1.23 "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and ordering that Notice be provided to the Settlement Class. The Settling Parties' proposed form of Preliminary Approval Order is attached to this Settlement Agreement as **Exhibit C**.

1.24 "Interim Class Counsel" and "Class Counsel" means Terence R. Coates (Markovits, Stock & DeMarco, LLC) and Joseph M. Lyon (The Lyon Firm).

1.25 "Released Claims" shall collectively mean any and all past, present, and future claims and causes of action including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. § 45, *et seq.*, and all similar statutes in effect in any states in the United States as defined below; violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, and all similar statutes in effect in any states in the United States; violations of the California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq.* and the California Consumers Legal Remedies Act, Cal Civ. Code § 1750, *et seq.* and similar state consumer-protection statutes; negligence; negligence *per se*; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief or judgment, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a

fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons based on, relating to, concerning or arising out of the alleged Data Incident or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of any Person who has timely excluded themselves from the Settlement Class.

1.26    "Related Entities" means Defendant's past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

1.27    "Released Persons" means Defendant and its Related Entities and each of their past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, principals, agents, attorneys, insurers, and reinsurers.

1.28    "Remainder Funds" means the funds, if any, that remain in the Settlement Fund after settlement payments for all Valid Claims (as defined below). The funds remaining in the Settlement Fund after settlement payments have been distributed and the time for cashing and/or depositing checks has expired will be Remainder Funds. The Remainder Funds will be sent to one or more court-approved charitable organizations as a *cy pres* distribution. The Parties will jointly recommend the entity or entities to the Court that will be the recipients of the *cy pres* distribution.

1.29    "Service Awards" shall have the meaning ascribed to it as set forth in ¶ 7.3 of this Settlement Agreement. The Service Awards requested in this matter will be $3,500.00 to each Class Representative, subject to court approval and will be in addition to any other Settlement benefits Plaintiffs may receive. The Service Awards shall be paid using and through the Settlement Fund.

1.30    "Settlement Administration" means the processing and payment of claims received from Settlement Class Members by the Settlement Administrator.

1.31    "Settlement Administrator" means Kroll Settlement Administration, LLC experienced in administering class action claims generally and specifically those of the type provided for and made in data breach litigation.

1.32    "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.33    "Settlement Class" means all natural persons residing in the United States who were sent a Notice Letter notifying them that their Private Information was compromised in the Data Incident. The Settlement Class specifically excludes: (i)  all Persons who timely and validly request exclusion from the Settlement Class; (ii) the Judge assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under

criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

1.34 "Settlement Class Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

1.35 "Settlement Fund" means a non-reversionary common fund to be funded by Defendant in the amount of one million seven hundred and fifty thousand dollars ($1,750,000.00) which shall be deposited into the Escrow Account as set forth in ¶¶ 8.1, 8.2.

1.36 "Settling Parties" means, collectively, Defendant and Plaintiffs, individually and on behalf of the Settlement Class and all Released Persons.

1.37 "Short Notice" means the short notice of the proposed class action settlement, substantially in the form as shown in **Exhibit D** to this Settlement Agreement. The Short Notice will direct recipients to the Settlement Website where recipients may view the Long Notice and make a claim for monetary relief. The Short Notice will also inform Settlement Class Members, *inter alia*, of the Claims Deadline, the Opt-Out Date and Objection Date, and the date of the Final Fairness Hearing (as defined below).

1.38 "United States" as used in this Settlement Agreement means the United States of America and includes all of its States, the District of Columbia and all territories.

1.39 "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any Plaintiff, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Plaintiffs

intend to and expressly shall have, and each of the other Settlement Class Members intend to and shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, (or any similar comparable, or equivalent provision of any federal, state or foreign law, or principle of common law ) which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Settlement Class Members, including Plaintiffs, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiffs expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims, including Unknown Claims.  The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.40    "Valid Claims" means Settlement Claims in an amount approved by the Settlement Administrator or found to be valid through the claims processing and/or Dispute Resolution process.

## 2. Settlement Benefits

2.1    <u>Claimed Benefits</u>:  All Settlement Class Members shall have the opportunity to submit a Claim Form for certain Claimed Benefits on or before the Claims Deadline.  The Claimed

Benefits, as described below, shall include: (a) Pro-Rata Cash Payment; (b) Out-of-Pocket-Expense Claims; (c) Lost-Time Claims; (d) California Claims; (e) Verified Fraud.

      a)    <u>$50 Pro-Rata Cash Payment</u>. After the distribution of attorneys' fees, Class Counsel's litigation expenses, Administrative Fees, Service Awards, Out-of-Pocket Expense Claims, and Lost Time Claims (each of which is defined below in this Section), the Settlement Administrator will make *pro rata* settlement payments of the remaining Settlement Fund to each Class Member who submits a claim. This may pro rata increase or decrease the $50 cash payment. No documentation or attestation is required.

      b)    <u>Out-of-Pocket Expense Claims</u>.  Settlement Class Members can submit a Claim Form for reimbursement of documented out-of-pocket losses reasonably traceable to the Data Incident up to $5,000.00 per individual ("Out-of-Pocket-Expense Claims").  Out-of-Pocket-Expense Claims will include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after March 11, 2022 that the claimant attests under penalty of perjury were caused or otherwise incurred as a result of the Data Incident, through the date of claim submission; and miscellaneous expenses such as notary, data charges (if charged based on the amount of data used) fax, postage, copying, mileage, cell phone charges (only if charged by the minute), and long-distance telephone charges.

Settlement Class Members with Out-of-Pocket-Expense Claims must submit documentation and attestation supporting their claims.  This may include receipts or other documentation, not "self-prepared" by the claimant, that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but may be considered to add clarity or support to other submitted documentation.

c) <u>Lost-Time Claims</u>.  Settlement Class Members can submit a Claim Form for reimbursement for time spent remedying issues related to the Data Incident for up to four (4) total hours at a rate of $25 per hour capped at $100 ("Lost-Time Claims"). No documentation need be submitted in connection with Lost-Time Claims, but Settlement Class Members must attest that the time claimed was actually spent as a result of the Data Incident.

d) <u>California Claims</u>.  Settlement Class Members can submit a Claim Form for an additional benefit of $100.00 per Settlement Class Member as compensation for their statutory claim(s) under California law ("California Claims").  To be eligible to receive compensation for California Claims, Settlement Class Members must attest, under penalty of perjury, that they were residents of California at the time of the Data Incident.  To redeem this $100.00 benefit, Settlement Class Members need not submit any documentation.

e)    Verified Fraud: $250 per incident. Settlement Class Members can submit a Claim Form for documented incident of fraud for $250 per incident capped at $ 5,000.00 per individual for verified and documented incidents of fraud ("Verified Fraud"). Verified Fraud Claims will include, without limitation, any verified incident regardless of reimbursement. This may include fraudulent bank or credit card charges, tax filings, opening of bank and/or credit accounts, unemployment filings, etc. Settlement Class Members with Verified Fraud Claims must submit documentation and attestation supporting their claims. Receipts or other documentation, not "self-prepared" by the claimant, that documents the incident are required. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but may be considered to add clarity or support to other submitted documentation.

2.2    Any residual funds after payment of all class benefits, Settlement Administration fees, attorneys' fees, costs, and Service Awards shall be used for a *pro rata* increase of the $50 pro rata cash payment claims set forth in Section 2.1(a) above, with no maximum payment. Any funds that remain after the distribution and reissuance of all payments from the Settlement Fund, including for settlement checks that are not cashed by the deadline to do so, will be Remainder Funds that shall be distributed to a charitable organization approved of by the Parties and subject to Court approval.

2.3    Business Practices Changes & Confirmatory Discovery. In connection with the Parties mediation, Parker provided Plaintiffs with informal discovery regarding the Incident and the security business practice changes that Parker has made to improve its information security

posture following the Incident. In connection with the final approval of the settlement, and in conjunction with Class Counsel, Parker will submit a declaration to the Court attesting to the security enhancements that have been made following the Incident. This declaration shall be submitted to the Court under seal, as provided for pursuant to the proposed Preliminary Approval Order.

2.4     <u>Dispute Resolution for Claims</u>.    The Settlement Administrator, in its sole discretion to be reasonably exercised, will determine whether: (1) the claimant is a Settlement Class Member; (2) the claimant has provided all information needed to complete the Claim Form, including any documentation that may be necessary to reasonably support the Out-of-Pocket-Expense Claims or Verified Fraud Claims described in Section 2.1; and (3) the information submitted could lead a reasonable person to conclude that it is more likely than not the claimant has suffered the claimed losses as a result of the Data Incident.  The Settlement Administrator may, at any time, request from the claimant, in writing, additional information as the Settlement Administrator may reasonably require in order to evaluate the claim, e.g., documentation requested on the Claim Form, information regarding the claimed losses, and claims previously made for identity theft and the resolution thereof.  For any such claims that the Settlement Administrator determines to be implausible, the Settlement Administrator will submit those claims to the Settling Parties (one Plaintiffs' lawyer shall be designated to fill this role for all Plaintiffs).  If the Settling Parties do not agree with the claimant's Settlement Claim, after meeting and conferring, then the Settlement Claim shall be referred for resolution to the Settlement Administrator for final determination.

2.4.1. Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is facially valid, the

Settlement Administrator shall request additional information and give the claimant fourteen (14) days to cure the defect before rejecting the claim.  If the defect is not cured, then the claim will be deemed invalid and there shall be no obligation to pay the defective claim.

2.4.2  Following receipt of additional information requested by the Settlement Administrator, the Settlement Administrator shall have ten (10) days to accept, in whole or lesser amount, or reject each claim.  If, after review of the claim and all documentation submitted by the claimant, the Settlement Administrator determines that such a claim is facially valid, then the claim shall be paid.  If the claim is not facially valid because the claimant has not provided all information needed to complete and evaluate the claim, then the Settlement Administrator may reject the claim without any further action.  A defect in one claim shall not cause rejection of any other valid claim submitted by the claimant.

2.4.3.  Settlement Class Members shall have ten (10) days from receipt of the offer to accept or reject any offer of partial payment received from the Settlement Administrator.

2.5  <u>Settlement Expenses</u>.  All costs for notice to the Settlement Class Members as required under ¶ 3.2, Administration Fees under ¶¶ 9.1-9.4 and the costs of Dispute Resolution described in ¶¶ 2.4, 9.1 shall be paid out of the Settlement Fund.

2.6  <u>Settlement Class Certification</u>.  The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class.  If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue.  The

Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

**3.     Order of Preliminary Approval and Publishing of Notice of Final Fairness Hearing**

3.1.     As soon as practicable after the execution of the Settlement Agreement, Proposed Settlement Class Counsel and counsel for Defendant shall jointly submit this Settlement Agreement to the Court, and Interim Class Counsel will file a motion for preliminary approval of the settlement with the Court requesting entry of a Preliminary Approval Order in the form substantially similar to **Exhibit C** in both terms and cost, requesting, *inter alia:*

    a)     certification of the Settlement Class for settlement purposes only pursuant to ¶ 2.6;

    b)     preliminary approval of the Settlement Agreement as set forth herein;

    c)     appointment of Interim Class Counsel as Settlement Class Counsel;

    d)     appointment of Plaintiffs as Class Representatives;

    e)     approval of the Short Notice to be emailed or mailed to Settlement Class Members in a form substantially similar to the one attached as **Exhibit D** this Settlement Agreement;

    f)     approval of the Long Notice to be posted on the Settlement Website in a form substantially similar to the one attached as **Exhibit B** to this Settlement Agreement, which, together with the Short Notice, shall include a fair summary of the Parties' respective litigation positions, statements that the settlement and notice of settlement are legitimate and that the Settlement Class Members are entitled to benefits under the

settlement, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, instructions for how to obtain the Automatic Benefits, the process and instructions for making claims to the extent contemplated herein, and the date, time and place of the Final Fairness Hearing;

g)    approval of a Claim Form to be used by Settlement Class Members to make a claim in a form substantially similar to the one attached as **Exhibit A** to this Settlement Agreement; and

h)    appointment of Kroll Settlement Administration, LLC as the Settlement Administrator.

The Short Notice, Long Notice, and Claim Form have been reviewed and approved by the Settlement Administrator but may be revised as agreed upon by the Settling Parties prior to submission to the Court for approval. Immaterial revisions to these documents may also be made prior to dissemination of notice.

3.2    Costs for providing notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Administration Fees shall be paid from the Settlement Fund. Attorneys' fees, costs, and expenses of Proposed Settlement Class Counsel, and Service Awards to Class Representatives, as approved by the Court, shall also be paid from the Settlement Fund. Notice shall be provided to Settlement Class Members by the Settlement Administrator as follows:

a)    *Class Member Information*: No later than fourteen (14) days after entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the name and last known physical address of each

Settlement Class Member (collectively, "Class Member Information") that Defendant possesses.

b)      The Class Member Information and its contents shall be used by the Settlement Administrator solely for the purpose of performing its obligations pursuant to this Agreement and shall not be used for any other purpose at any time. Except to administer the settlement as provided in this Settlement Agreement, or provide all data and information in its possession to the Settling Parties upon request, the Settlement Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class Member Information.

c)      *Settlement Website*: Prior to the dissemination of the Notice, the Settlement Administrator shall establish the Settlement Website (www.phdatasettlement.com) that will inform Settlement Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information ("Settlement Website"). The Settlement Website shall include, in .pdf format and available for download, the following: (i) the Long Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) this Settlement Agreement; and (v) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall provide Settlement Class Members with the ability to complete and submit the Claim Form electronically.

d)      *Short Notice:* Within thirty (30) days after the entry of the Preliminary Approval Order ("Notice Date") and to be substantially completed not

21

later than ninety (90) days after entry of the Preliminary Approval Order, and subject to the requirements of this Settlement Agreement and the Preliminary Approval Order, the Settlement Administrator will provide notice to the Settlement Class though any one of the following means:

- via email to any email address in Defendant's possession;

- via mail to the postal address in Defendant's possession. Before any mailing under this paragraph occurs, the Settlement Administrator shall run the postal addresses of Settlement Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS;

- in the event that a Short Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Settlement Administrator shall re-send the Short Notice to the forwarding address within ten (10) days of receiving the returned Short Notice;

- in the event that subsequent to the first mailing of a Short Notice, and at least fourteen (14) days prior to the Opt-Out Date and Objection Date, a Short Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Settlement

22

Administrator shall perform a standard skip trace, in the manner that the Settlement Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Settlement Administrator will re-send the Short Notice within seven (7) days of receiving such information.  This shall be the final requirement for mailing.

e)  Publishing, on or before the Notice Date, the Claim Form, Long Notice and this Settlement Agreement on the Settlement Website, as specified in the Preliminary Approval Order, and maintaining and updating the website throughout the claim period;

f)  A toll-free help line with an IVR system and a live operator option shall be made available to provide Settlement Class Members with additional information about the settlement.  The Settlement Administrator also will provide copies of the Long Notice and paper Claim Form, as well as this Settlement Agreement, upon request; and

g)  Contemporaneously with seeking Final Approval of the Settlement, Proposed Settlement Class Counsel and Defendant shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with these provisions regarding notice.

3.3  The Short Notice, Long Notice, and other applicable communications to the Settlement Class may be adjusted by the Settlement Administrator in consultation and agreement with the Settling Parties as may be reasonable and not inconsistent with such approval.  The Notice

Program shall commence within 30 days after entry of the Preliminary Approval Order and shall be completed within 45 days after entry of the Preliminary Approval Order.

3.4     Proposed Settlement Class Counsel and Defendant's counsel shall request that after notice is completed the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

3.5     Defendant will also cause the Settlement Administrator to provide (at Defendant's expense) notice to the relevant state and federal governmental officials as required by the Class Action Fairness Act.

### 4.     Opt-Out Procedures

4.1     Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Settlement Administrator.  The written notice must clearly manifest a Person's intent to opt-out of the Settlement Class.  To be effective, written notice must be postmarked no later than the Opt-Out Date, as defined in ¶ 1.19.

4.2     All Persons who submit valid and timely notices of their intent to opt-out of the Settlement Class, as set forth in ¶ 1.19 above, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement.  All Persons falling within the definition of the Settlement Class who do not validly opt-out of the Settlement Class shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

4.3     If the Settlement Administrator receives more than 2,300 Opt-Outs from the Settlement, than Defendant shall have the right to terminate the Settlement Agreement in its entirety.

### 5. Objection Procedures

5.1    Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date, as defined in ¶ 1.18. Such notice shall state: (i) the objector's full name and address; (ii) the case name and docket number, *Migliaccio, et al, v. Parker Hannifin Corporation.*, Case No. 1:22-cv-00835-DAP (N.D. Ohio); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of the objector's settlement notice, copy of original notice of the Data Incident, or a statement explaining why the objector believes he or she is a Settlement Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection.  To be timely, written notice of an objection in the appropriate form must be mailed, with a postmark date no later than the Objection Date, to Terence Coates (Markovits, Stock, & DeMarco, LLC) at 119 East Court Street, Suite 530, Cincinnati, Ohio 45202, as Class Counsel; and David Carney (Baker & Hostetler, LLP) at 127 Public Square, Suite 2000, Cleveland, Ohio 44114, as counsel for Defendant.  The objector or his or her counsel may also file Objections with the Court through the Court's ECF system or submitting them to the Clerk of Court, with service on Class Counsel and Defendant's Counsel made through the ECF system.  For all objections mailed to Proposed Settlement Class Counsel and counsel for Defendant, Class Counsel will file them with the Court with the Motion for Final Approval of the Settlement.

5.2     Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation.  The exclusive means for any challenge to the Settlement Agreement, including any claims, shall be through the provisions of ¶¶ 2.4, 5.1, 9.1.  Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

### 6.    Release

6.1     Upon the Effective Date, each Settlement Class Member, including Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims as against all Released Parties.  Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted. Any other claims or defenses Plaintiffs and each and all of the Settlement Class Members may have against Defendant that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Data Incident, the Litigation, or the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

7. **Plaintiffs' Counsel's Attorneys' Fees, Costs, and Expenses; Service Awards to Plaintiffs**

7.1     The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or Service Awards to Plaintiffs until after the substantive terms of the settlement had been agreed upon, other than that reasonable attorneys' fees, costs, expenses, and Service Awards to Plaintiffs as may be agreed to by Defendant and Class Counsel and as ordered by the Court shall be paid from the Settlement Fund.  Defendant and Class Counsel then negotiated and agreed to the procedure as set forth herein.

7.2     Class Counsel will move the Court for an award of attorneys' fees not to exceed 33.33% of the Settlement Fund, or approximately $583,333.33 and litigation expenses not to exceed $15,000.00 to be paid from the Settlement Fund. Class Counsel, in their discretion, shall allocate and distribute any amounts of attorneys' fees, costs, and expenses awarded by the Court among Class Counsel.

7.3     Subject to Court approval, Plaintiffs intend to request Service Awards in the amount of up to $3,500.00 to each of the Plaintiffs, also to be paid from the Settlement Fund.

7.4     If awarded by the Court, the attorneys' fees and expenses  as set forth in ¶ 7.2 will be distributed to Class Counsel, within 14 days after the Effective Date.  Payment of the Settlement Fund will be deposited into the Escrow Account opened by the Settlement Administrator. Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses among Plaintiffs' Counsel and Service Awards to Plaintiffs consistent with ¶ 7.2.

7.5     The amount(s) of any award of attorneys' fees, costs, and expenses, and the Service Awards to Plaintiffs, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement.  These payments will not in any way reduce the consideration being made available to the Settlement Class as

described herein.  No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or Service Awards ordered by the Court to Class Counsel or Plaintiffs shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

**8.    Settlement Fund**

8.1    <u>Deposits</u>.        Defendant agrees to make a payment of One Million Seven Hundred Fifty Thousand Dollars and No Cents ($1,750,000.00) and deposit that payment into the Settlement Fund as follows: (i) Defendant Parker shall pay One Million Five Hundred and Fifty Thousand Dollars and No Cents ($1,550,000.00) into the Settlement Fund within 14 days after the later of (i) the Effective Date, and (ii) the receipt of a W-9 from the Settlement Administrator, along with wire instructions and independent verbal confirmation of the payment details; and (ii) Defendant Parker shall pay Two Hundred Thousand Dollars ($200,000.00) into the Settlement Fund within 14 days after the later of (i) the Court's entry of the Preliminary Approval Order to pay for the Administration Fees, and (ii) the receipt of a W-9 from the Settlement Administrator, along with wire instructions and independent verbal confirmation of the payment details, whichever date is later. For the avoidance of doubt, and for purposes of this Settlement Agreement only, Defendant Parker's liability shall not exceed On Million Seven Hundred and Fifty Thousand Dollars and No Cents ($1,750,000.00) except, and only to the extent, that Defendant has agreed to pay the costs of the CAFA Notice separate and apart from the Settlement Fund.

8.2    <u>Custody of the Settlement Fund</u>.  The Settlement Fund shall be deposited into an appropriate trust established by the Settlement Administrator but shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed

pursuant to the Settlement Agreement or returned to those who paid the Settlement Fund in the event this Settlement Agreement is voided, terminated, or cancelled.

8.3     Treasury Regulations and Fund Investment. The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund ("QSF") within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any taxes owed with respect to the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation ("FDIC") at a financial institution determined by the Settlement Administrator and approved by the Parties.  Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

8.4     Taxes. All taxes relating to the Settlement Fund shall be paid out of the Settlement Fund, shall be considered an Administrative Expense, and shall be timely paid by the Settlement Administrator without prior order of the Court.  Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for taxes (including, without limitation, taxes payable by reason of any such indemnification payments).  The Parties and their respective counsel have made no representation or warranty with respect to any tax treatment by any Class Representative

29

or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Each Class Representative and Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, they, or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

9.     **Administration of Claims**

9.1     The Settlement Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶ 2.1.  Class Counsel and Defendant shall be given reports as to both claims and distribution, and have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate.  The Settlement Administrator's determination of whether a Settlement Claim is a Valid Claim shall be binding, subject to the Dispute Resolution process set forth in ¶ 2.4.  All claims agreed to be paid in full by Defendant shall be deemed valid.

9.2     Payment of Valid Claims, whether via mailed check or electronic distribution, shall be made within 30 days of the Effective Date.

9.3     All Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

9.4     No Person shall have any claim against the Settlement Administrator, Defendant, Class Counsel, Plaintiffs, and/or Defendant's counsel based on distributions of benefits to Settlement Class Members.

**10.     Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

10.1     The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

a)     Defendant has not exercised its option to terminate the Settlement Agreement pursuant to ¶ 4.3,

b)     the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

c)     the Judgment has become Final, as defined in ¶ 1.12.

10.2     If all conditions specified in ¶ 1.12 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated unless Class Counsel and Defendant's counsel mutually agree in writing to proceed with the Settlement Agreement.

10.3     Within 10 days after the Opt-Out Date, the Settlement Administrator shall furnish to Class Counsel and to Defendant's counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

10.4     In the event that the Settlement Agreement or the releases set forth in ¶ 6.1 above are not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (i) the Settling Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel, and (b) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.  Notwithstanding any

31

statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or Service Awards shall constitute grounds for cancellation or termination of the Settlement Agreement.  Further, notwithstanding any statement in this Settlement Agreement to the contrary, Defendant shall be obligated to pay amounts already billed or incurred for costs of notice to the Settlement Class, Settlement Administration, and Dispute Resolution pursuant to ¶¶ 2.4, 3.2, 9.1-9.4 above and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

**11.     Miscellaneous Provisions**

11.1     The Settling Parties (i) acknowledge that it is their intent to consummate this Agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

11.2     In the event that the aggregated amount of payments of all Valid Claims (i.e., $50 Pro Rata Cash Payment, Out-of-Pocket Expense Claims, Lost-Time Claims, Verified Fraud, and California Claims) exceeds the total amount of the Settlement Fund, then the value of the payments to be paid to each Settlement Class Member making a Valid Claim shall be reduced on a pro rata basis, such that the aggregate value of all payments for all claims does not exceed the Settlement Fund (after payment of all Settlement Administration Costs and Expenses, Attorneys' Fees, Expenses, and Service Awards).  All pro rata reduction determinations shall be made by the Settlement Administrator.

11.3     The Settling Parties intend this settlement to be a final and complete resolution of all claims and disputes between them with respect to the Data Incident and this Litigation.  The

settlement compromises claims, including but not limited to all Released Claims, that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the litigation was brought or defended in bad faith or without a reasonable basis.  It is agreed that no Party shall have any liability to any other Party as it relates to the Litigation, except as set forth herein.

11.4    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.5    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

11.6     The exhibits to this Settlement Agreement and any exhibits thereto are a material part of the Settlement and are incorporated and made a part of the Agreement.

11.7     This Settlement Agreement, including all exhibits hereto, contains the entire understanding between Defendant and Plaintiffs, individually and on behalf of the Settlement Class and all Released Entities, regarding the payment of the Litigation settlement and supersedes all previous negotiations, agreements, commitments, understandings, and writings between the Parties in connection with the payment of the Litigation settlement.  Except as otherwise provided herein, each party shall bear its own costs.  This Settlement Agreement supersedes all previous agreements made between the Parties.

11.8     Class Counsel, on behalf of the Settlement Class, and Defendant's counsel, on behalf of Defendant, are expressly authorized to take all appropriate actions required or permitted to be taken by the Parties pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Parties which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Parties.

11.9     Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

11.10     The Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

11.11     The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

11.12　The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement. The Court shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

11.13　As used herein, "he" means "he, she, they, or it;" "his" means "his, hers, theirs, or its," and "him" means "him, her, them, or it."

11.14　The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Ohio, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Ohio.

11.15　All dollar amounts are in United States dollars (USD).

11.16　If a Settlement Class Member opts to receive settlement benefits via mailed check, cashing the settlement check is a condition precedent to any Settlement Class Member's right to receive settlement benefits. All settlement checks shall be void ninety (90) days after issuance and shall bear the language: "This check must be cashed within ninety (90) days, after which time it is void." If a check becomes void, the Settlement Class Member shall have until six

months after the Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and there shall be no obligation to make payments to the Settlement Class Member for expense reimbursement or any other type of monetary relief. The same provisions shall apply to any re-issued check. For any checks that are issued or re-issued for any reason more than one hundred eighty (180) days after the Effective Date, requests for re-issuance need not be honored after such checks become void.

11.17    The Settlement Website shall be deactivated one hundred eighty (180) days after the Effective Date.

11.18    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

**[REST OF PAGE INTENTIONALLY BLANK]**

Class Counsel

Counsel for Parker-Hannifin Corporation Duly Authorized Signatory

DATED this 10th day of March, 2023

DATED this 10th day of March, 2023

By: /s/ Terence R. Coates

By: /s/

Terence R. Coates
tcoates@msdlegal.com
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700

David Carney
dcarney@bakerlaw.com
**BAKER & HOSTETLER LLP**
127 Public Square
Suite 2000
Cleveland, OH 44114
Telephone: (216) 861-7634

Joseph M. Lyon
jlyon@thelyonfirm.com
**THE LYON FIRM**
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333

*Attorneys for Defendant*

*Interim Co-Lead Counsel*

Marc E. Dann
notices@dannlaw.com
**DANNLAW**
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (513) 381-2333

*Interim Liaison Counsel*

**SETTLLEMENT TIMELINE**

| | |
|---|---|
| **From Order Granting Preliminary Approval** | |
| Defendant provides list of Class Members to the Settlement Administrator | +14 days |
| Long and Short Notices Posted on the Settlement Website | +14 days |
| Notice Deadline | +30 days |
| Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Service Awards | +76 days |
| Objection Deadline | +90 days |
| Exclusion Deadline | +90 days |
| Settlement Administrator Provide List of Objections/Exclusions to the Parties' counsel | +100 days |
| Claims Deadline | +120 days |
| | |
| **Final Approval Hearing** | _____, 2023 |
| Motion for Final Approval | -14 days |
| | |
| **From Order Granting Final Approval** | |
| Effective Date | +31 days, assuming no appeal has been taken. See definition of Final in the Agreement. |
| Payment of Attorneys' Fees and Expenses Class Representative Service Awards | +45 days |
| Payment of Claims to Settlement Class Members | +65 days |
| Settlement Website Deactivation | +240 days |

# EXHIBIT A

## <u>CLAIM FORM FOR PARKER-HANNIFIN DATA INCIDENT BENEFITS</u>

**USE THIS FORM TO MAKE A CLAIM FOR LOST TIME PAYMENTS AND OUT-OF-POCKET LOSS PAYMENTS**

For more information, call 1-888-888-8888 or visit the website ***www.phdatasettlement.com***

*Para una notificación en Español, pueda llamar 1-888-888-8888 o visitar nuestro sitio de web*
***www.phdatasettlement.com.***

**The DEADLINE to submit this Claim Form online (or mail it postmarked) is**

**[XXXX XX, 202X]**

## I.      GENERAL INSTRUCTIONS

If you were notified that your Private Information was potentially compromised in a cybersecurity attack on Parker Hannifin, you are a Class Member. The event that caused your data to be lost is referred to here as the "Data Incident."

The Settlement establishes a $1,750,000.00 fund to compensate Class Members for their lost time and out-of-pocket losses as well as for the costs of notice and administration, Plaintiffs' service awards, and attorneys' fees and expenses as awarded by the Court. As a Class Member, you are eligible for cash payments as reimbursement for time and money spent in response to the Data Incident (such as money spent on credit monitoring), as well as for any money you lost as a result of incidents of fraud or identity theft connected to the Data Incident. You must fill out this claim form to receive these benefits.

The benefits are as follows:

### <u>Lost Time Claims</u>
You may submit a claim for reimbursement for time spent resolving issues attributable to the Data Incident. You will be reimbursed at $25/hour of time spent, **up to $100 total.** By filling out this claim form, you can attest to the amount of time you spent attempting to mitigate the effects of the Data Incident on your life. This can include, for example, time spent on the phone with banks, time spent dealing with replacement card issues or reversing fraudulent charges, time spent researching the Data Incident, time spent monitoring accounts, or time spent freezing your credit. **You do not have to include documentation of your lost time. Instead, you can swear, under penalty of perjury, to the amount of time you spent**.

### <u>Out-of-Pocket Losses</u>
You are eligible to receive reimbursement for money you paid to protect yourself after the Data Incident, such as money spent on a credit monitoring service. You are also eligible to receive reimbursement for money you lost as a result of fraud or identity theft, if that money has not been reimbursed from another source. This includes:

- Late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, and/or card cancellation or replacement fees;
- Late fees from transactions with third parties that were delayed due to fraud or card replacement;
- Unauthorized charges on credit, debit or other payment cards that were not reimbursed;
- Parking expenses or other transportation expenses for trips to a financial institution to address fraudulent charges or receive a replacement payment card;
- Credit freeze fees, or credit monitoring costs that were incurred on or after March 11, 2022; and
- Other expenses that are reasonably attributable to the Data Incident that were not reimbursed.

These losses must be documented; you must submit copies of documents supporting your claims, such as receipts or other documentation. "Self-prepared" documents, such as handwritten receipts, will not count as documentation, but you can submit them as clarification to other, official documents.

### Verified Fraud
For each documented and verified instance of identity fraud you have suffered, you are entitled to $250, regardless of whether you have been reimbursed for that fraud.

Verified Fraud Claims include:
- Fraudulent bank or credit card charges,
- Tax filings,
- Opening of bank and/or credit accounts,
- Unemployment filings,
- Other fraudulent actions taken using your information from the Data Incident.

Settlement Class Members with Verified Fraud Claims must submit documentation and attestation supporting their claims. Receipts or other documentation, not "self-prepared" by the claimant, that documents the incident are required. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but may be considered to add clarity or support to other submitted documentation.

### California Residents
Class members who were California residents at the time of the breach may be entitled to an additional payment of $100. To prove California residency, you may swear, under penalty of perjury, to the span of time you lived in California.

### $50 Pro-Rata Residual Cash Payment
After distributing funds for the claims payments set forth above to claimants, as well as attorneys' fees, Class Counsel's litigation expenses, Administrative Fees, and Service Awards, if there is any money left over, the Settlement Administrator will make *pro rata* settlement payments of the remaining Settlement Fund to each Class Member who submits a cash payment claim. The remaining amount of the Settlement Fund will be distributed pro rata for each Class Member who submits a claim, which may increase or decrease the $50 cash payment amount.

### Completing the Claim Form
This Claim Form may be submitted online at **www.phdatasettlement.com** or completed and mailed to the address below. Please type or legibly print all requested information, in blue or black ink. Mail your completed Claim Form, including any supporting documentation, by U.S. mail to:

Parker Hannifin Data Incident Settlement Administrator
P.O. Box XXXX
XXXXX, XX XXXXX

## II.        CLAIMANT INFORMATION

The Settlement Administrator will use this information for all communications regarding this Claim Form and the Settlement. If this information changes prior to distribution of cash payments, you must notify the Settlement Administrator in writing at the address above.

Claimant Name: _____

_____
            First Name                                    MI    Last Name

Street Address:
_____

Street Address Second Line:
_____

City: _____ State: _____ Zip Code: _____

Class Member ID:
_____

If you received a notice of this Settlement by U.S. mail, your Class Member ID is on the envelope or postcard.
If you received a notice of this Settlement by email, your Class Member ID is in the email.

E-mail Address: _____

[optional] Daytime Phone Number: ( _____ ) _____ - _____

[optional] Evening Phone Number: ( _____ ) _____ - _____

### <u>You may select a</u>:

## III.        CASH PAYMENT

**Cash Payment**: Would you like to receive a cash payment under the Settlement? **(circle one)**

<b>Yes          No</b>

   \*\* The payments under this option will originally be set at $50, however, the value of cash payment under this option will be increased or decreased pro rata based on the balance of the Settlement Fund after the payment of other benefits, attorneys' and settlement administrator fees and expenses.

## IV.        LOST TIME PAYMENT

☐    Please check off this box for this section if you are electing to seek reimbursement for Lost Time you undertook to prevent or mitigate fraud and identity theft following the announcement of the Data Incident.

Class Members who elect to submit a Claim for Lost Time Payment may claim, together with Out-of-Pocket Losses, no more than $100 at $25/hour for four hours of time actually spent addressing issues arising from the

Data Incident. If you are selecting reimbursement for Lost Time, you must fill in the blanks in this section and sign the certification at the end of the claim form.

I, _____, declare that I suffered Lost Time. Specifically, I spent the following number of

*/Name/*

hours attempting to prevent fraud or mitigate fraud and identity theft related to the Data Incident: _____

hours (rounded to the nearest half-hour).


## V.    CASH PAYMENT TO CALIFORNIA RESIDENTS

California residents, due to the heightened statutory damages available to them under California law, may elect to receive a $100 cash payment under the Settlement.

If you are a California resident, would you like to receive a $100 cash payment under the Settlement? **(circle one)**


**Yes**            **No**

** The payments under this option will originally be set at $100, however, the value of cash payment under this option will be increased or decreased pro rata based on the balance of the Settlement Fund after the payment of other benefits, attorneys' and settlement administrator fees and expenses.

## VI.    REIMBURSEMENT FOR OUT-OF-POCKET LOSSES AND/OR VERIFIED FRAUD

☐  Please check off this box for this section if you are electing to seek reimbursement for unreimbursed **Out-of-Pocket Losses** and such claimed losses above will total no more than $5,000.00. You must provide reasonable documentation of the claimed Out-of-Pocket Losses. Self-attested documentation will not suffice.

☐  Please check off this box for this section if you are electing to seek reimbursement for one or more incidents of **Verified Fraud.**  Such claimed payments will be $250/incident, but in total no more than $5,000.00. You must provide reasonable documentation for **each** instance of fraud. Self-attested documentation will not suffice.

<u>**Making a Claim for Out-of-Pocket Expenses**</u>
In order to make a claim for Out-of-Pocket Expenses, <u>**you must**</u> (i) fill out the information below, or fill out a separate sheet to be submitted with this Claim Form; (ii) sign the attestation at the end of this Claim Form (section V); and (iii) include reasonable documentation supporting each claimed loss along with this Claim Form. Out-of-Pocket losses need to be deemed fairly traceable to the Data Incident by the Settlement Administrator based on the documentation you provide and the facts of the Data Incident.


<u>**Failure to meet the requirements of this section may result in your claim being rejected by the Settlement Administrator.**</u>

| Out-of-Pocket Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| ☐ Unreimbursed fraud losses or charges | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Examples: Account statement with unauthorized charges highlighted; Correspondence from financial institution declining to reimburse you for fraudulent charges* Your documents: _____ _____ |
| ☐ Professional fees incurred in connection with identity theft or falsified tax returns. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Examples: Receipt for hiring service to assist you in addressing identity theft; Accountant bill for re-filing tax return* Your documents: _____ _____ _____ |
| ☐ Credit freeze | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Example: Receipts or account statements reflecting purchases made for credit monitoring and insurance services* Your documents: _____ _____ |
| ☐ Credit Monitoring ordered after receipt of the Data Incident Notice. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Example: Receipts or account statements reflecting purchases made for credit monitoring and insurance services* Your documents: _____ _____ |
| ☐ Miscellaneous expenses such as notary, fax, postage, gas, copying, mileage, and long-distance telephone charges. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Examples: Example: Phone bills, gas receipts, postage receipts; detailed list of locations to which you traveled (i.e. police station, IRS office) why you traveled there (i.e. police report or letter from IRS re: falsified tax return) and number of miles you traveled to remediate or address issues related to the Data Incident* Your documents: _____ _____ |
| ☐ Lost interest or other damages resulting from a delayed state and/or federal tax refund in connection with fraudulent tax return filing | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Examples: Letter from IRS or state about tax fraud in your name; Documents reflecting length of time you waited to receive tax refund and amount of.* Your documents: _____ _____ |

| Other (provide detailed description) ☐ | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Please provide detailed description below or in a separate document submitted with this Claim Form* Your documents: _____ _____ |
|---|---|---|---|

If you **do not submit** reasonable documentation supporting a claim for Out-of-Pocket Losses, or your claim for an Out-of-Pocket Loss payment is rejected by the Settlement Administrator for any reason and you do not cure the defect, only your claims for Lost Time, if such claims are made, will be considered.

## Verified Fraud Claims

You are eligible for an up to $250 payment for each incident of verified fraud you have suffered. Please use the checkboxes below to indicate what kind of fraud you've suffered and describe the documents you're submitting to substantiate the fraud. The payments for verified Fraud Claims are also subject to the $5,000 cap that applies to out-of-pocket losses.

| Verified Fraud Type (Fill all that apply) | Approximate Date of Fraud | Amount Defrauded (even if reimbursed) | Description of Supporting Reasonable Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| ☐ Fraudulent bank or credit card charges | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Examples: Account statement with unauthorized charges highlighted; correspondence with credit card company disputing the charges* Your documents: _____ _____ |
| ☐ Fraudulent tax filings | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Examples: Letter from IRS or state about tax fraud in your name; Accountant bill for re-filing tax return* Your documents: _____ _____ |
| ☐ Opening of bank accounts and/or credit cards in your name. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Examples: Notification from bank of new credit card or account; correspondence with bank about closing the account* Your documents: _____ _____ |
| ☐ Government benefits taken in your name | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Examples: Notification of unemployment benefits being taken; correspondence with agency regarding issue* Your documents: _____ _____ |

If you **do not submit** reasonable documentation supporting a claim for Verified Fraud payments, or your claim for a Verified Fraud payment is rejected by the Settlement Administrator for any reason and you do not cure the defect, only your claims for Lost Time, if such claims are made, will be considered.

## VI. CERTIFICATION

By submitting this Claim Form, I certify that I am eligible to make a claim in this settlement and that the information provided in this Claim Form and any attachments are true and correct. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I understand that this claim may be subject to audit, verification, and Court review and that the Settlement Administrator may require supplementation of this Claim or additional information from me. I also understand that all claim payments are subject to the availability of settlement funds and may be reduced in part or in whole, depending on the type of claim and the determinations of the Settlement Administrator.


Signature: _____          Date: _____

Print Name: _____

# EXHIBIT B

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**
**UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF OHIO**

*Migliaccio, et al, v. Parker Hannifin Corporation*, Case No. 1:22-cv-00835-DAP

<u>A court has authorized this notice.  This is not a solicitation from a lawyer.</u>

---

**If You Were Subject to the Parker-Hannifin Corporation Data Incident and Previously Received a Notice Letter Notifying You of the Data Incident, You Could be Eligible for a Payment from a Class Action Settlement**

---

- You may be eligible to receive a payment from a proposed $1,750,000 non-reversionary class action settlement (the "Settlement Fund").
- The class action lawsuit concerns the March 2022 Data Incident involving Parker-Hannifin Corporation ("Parker" or "Defendant") in which it was determined that an unauthorized third party gained access to certain Parker files containing current and former employees' sensitive personal information including names, Social Security numbers, dates of birth, driver's license numbers, U.S. passport numbers, financial account information, online account usernames and passwords, health insurance plan member ID numbers, and health insurance dates of coverage.  Parker denies any wrongdoing and denies that Parker has any liability but has agreed to settle the lawsuit on a classwide basis.
- To be eligible to make a claim, you must have received a notice letter of the Parker Data Incident that occurred in March 2022.
- Eligible claimants under the Settlement Agreement will be eligible to receive:

  ❖ **Reimbursement for the actual amount of unreimbursed out-of-pocket expenses up to $5,000, with supporting documentation of the monetary losses;**

  ❖ **Compensation of up to $100 for time spent dealing with fraud, identity theft, or other alleged misuse of your personal information that is fairly traceable to the Data Incident;**

  ❖ **Compensation for incidents of verified fraud of up to $5,000, with supporting documentation, including $250 per documented incident of identity fraud or fraudulent activity on an account;**

  ❖ **Compensation of up to $100 for eligible California residents; and**

  ❖ **$50 cash payment from the Settlement Fund that will be increased or decreased pro rata depending on the amount remaining in the Settlement Fund after allocation of the Settlement Fund for reimbursement of documented out-of-pocket expenses, payments for lost time, payments to certain California residents, payments for documented incidents of fraud, attorneys' fees and expenses, Class Representative Service Awards, and Settlement Administration Costs.**

- For more information or to submit a claim visit **www.phdatasettlement.com** or call 1-###-###-#### Monday through Saturday, between 8:30 a.m. and 5:00 p.m. E.T.
- **Please read this notice carefully. Your legal rights will be affected, and you have a choice to make at this time.**

|  | Summary of Legal Rights | Deadline(s) |
|---|---|---|
| **Submit a Claim Form** | The only way to receive payment. | Submitted or Postmarked on or Before _____, 2023 |
| **Exclude Yourself By Opting Out of the Class** | Receive no payment. This is the only option that allows you to keep your right to bring any other lawsuit against Defendant for the same claims if you are a class member. | Submitted or Postmarked on or Before _____, 2023 |
| **Object to the Settlement and/or Attend the Fairness Hearing** | You can write the Court about why you agree or disagree with the Settlement. The Court cannot order a different Settlement. You can also ask to speak to the Court at the Final Approval Hearing on _____, 2023 about the fairness of the Settlement, with or without your own attorney. | Received on or Before _____, 2023 |
| **Do Nothing** | Receive no payment. Give up rights if you are a Class Member. | No Deadline. |

- Your rights and options as a Class Member – and the deadlines to exercise your rights – are explained in this notice.
- The Court still will have to decide whether to approve the Settlement. Payments to class members will be made if the Court approves the Settlement and after any possible appeals are resolved.

## What This Notice Contains

**Basic Information**...............…………………………………………………….….…..

**Who is in the Settlement**…………………………………………………...…………..

**The Settlement Benefits—What You Get if You Qualify**……………………….…..

**How do You Submit a Claim**……………………….……………………...……

**What Does Defendant Get**………..………………………..……………………...……

**Excluding Yourself from the Settlement**……………………………….…...….…..

**Objecting to the Settlement**……………………………....…………………...……

**The Lawyers Representing You**………………………………………………….......

**The Court's Fairness Hearing** ...............………….......................................

**If You Do Nothing**…………………………………………….………………......

**Getting More Information**…………………………………………….………....

## BASIC INFORMATION

| 1. | Why is there a notice? |
|---|---|

The Court authorized this notice because you have a right to know about the Settlement, and all of your options, before the Court decides whether to give "final approval" to the Settlement. This notice explains the nature of the lawsuit that is the subject of the Settlement, the general terms of the Settlement, and your legal rights and options.

Judge Dan Aaron Polster of the United States District Court for the Northern District of Ohio is overseeing this case captioned as *Migliaccio v. Parker Hannifin Corporation*, Case No. 1:22-cv-835. The people who brought the lawsuit are called the Plaintiffs. The company being sued, Parker-Hannifin Corporation, is called the Defendant.

| 2. | What is this lawsuit about? |
|---|---|

The lawsuit claims that Defendant was responsible for the Data Incident and asserts claims such as: negligence; negligence *per se*; breach of implied contract; unjust enrichment; declaratory relief; violations of the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq*.; violations of the Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq*.; invasion of privacy under the California Constitution, Article I, Section 1; violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.; and violations of the New York General Business Law § 349.

Defendant denies these claims and says it did not do anything wrong. No court or other judicial entity has made any judgment or other determination that Defendant has any liability on these claims or did anything wrong.

| 3. | Why is this lawsuit a class action? |
|---|---|

In a class action, one or more people called class representatives or representative plaintiffs sue on behalf of all people who have similar claims. Together, all of these people are called a class, and the individuals are called class members. One court resolves the issues for all class members, except for those who exclude themselves from the class.

| 4. | Why is there a Settlement? |
|---|---|

The Court has not decided in favor of the Plaintiffs or Defendant. Instead, both sides agreed to the Settlement. The Settlement avoids the cost and risk of a trial and related appeals, while providing benefits to members of the Settlement Class ("Settlement Class Members"). The "Class Representatives" appointed to represent the Settlement Class, and the attorneys for the Settlement Class ("Settlement Class Counsel," see Question 18) think the Settlement is best for all Settlement Class Members.

## WHO IS IN THE SETTLEMENT?

| 5. | How do I know if I am part of the Settlement? |
|---|---|

You are affected by the Settlement and potentially a member of the Settlement Class if you reside in the United States and your Private Information was compromised in connection with the Data Incident, including if you were mailed a notification by or on behalf of Parker Hannifin on or around May 10, 2022 regarding the Data Incident.

Only Settlement Class Members are eligible to receive benefits under the Settlement.  Specifically excluded from the Settlement Class is Parker Hannifin and its officers and directors, all Settlement Class Members who timely and validly request exclusion from the Settlement Class, the judge assigned to evaluate the fairness of this Settlement, and any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

| 6. | What if I am not sure whether I am included in the Settlement? |
|---|---|

If you are not sure whether you are included in the Settlement, you may call <mark>1-###-###-####</mark> with questions.  You may also write with questions to:

Parker Hannifin Settlement Administrator
<mark>address</mark>
<mark>address</mark>
<mark>**info@phdataettlement.com**</mark>

### THE SETTLEMENT BENEFITS–WHAT YOU GET IF YOU QUALIFY

| 7. | What does the Settlement provide? |
|---|---|

The Settlement provides that Defendant will fund the following payments up to a total of $1,750,000: (a) $25 per hour, up to a total of $100, for Settlement Class Members who attest that the time claimed was actually spent as a result of the Data Incident; (b) up to $5,000 for reimbursement of your documented out-of-pocket expenses reasonably traceable to the Data Incident; and (c) $250 for each verified and documented incident of fraud (included in the cap of $5,000 for unreimbursed expenses) that you incurred.

The Settlement also provides that Settlement Class Members who were residents of the State of California at the time of the Data Incident are eligible for an additional benefit of $100 upon submitting a claim and attesting that  they were a California resident at the time of the Data Incident.

After the distribution of attorneys' fees, Class Counsel's litigation expenses, Administrative Fees, Service Awards, and Settlement benefits to claimants, the Settlement Administrator will make a *pro rata* settlement payment of $50, subject to adjustment as set forth in the below paragraph, out of any remaining funds to each Class Member who submits a claim for this additional cash payment. No documentation or attestation is required.

The Settlement benefits are also subject to pro rata reduction as needed in the event that the total claims exceed the $1,750,000 cap on payments to be made by Defendant, and payments may also be increased  on a pro rata basis until the Settlement Fund is distributed. Payment of attorneys' fees, costs and expenses (see Question 19) and the costs of notifying the Settlement Class and administering the Settlement will also be  paid out of the Settlement.

Also as part of the Settlement, Defendant either has undertaken or will undertake certain reasonable steps to further secure its systems and environments.

| 8. | What payments are available for reimbursement under the settlement? |
|---|---|

Settlement Class Members who submit a claim are eligible to receive:

a) Reimbursement of actual, documented, unreimbursed out-of-pocket expenses resulting from the Data Incident (up to $5,000 in total), such as:

- late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, and/or card cancellation or replacement fees;
- late fees from transactions with third parties that were delayed due to fraud or card replacement;
- unauthorized charges on credit, debit or other payment cards that were not reimbursed;
- parking expenses or other transportation expenses for trips to a financial institution to address fraudulent charges or receive a replacement payment card;
- credit freeze fees, or credit monitoring costs that were incurred on or after March 11, 2022; and
- other expenses that are reasonably attributable to the Data Incident that were not reimbursed.

b) Compensation for time spent remedying issues related to the Data Incident, up to the amount of $100.

c) Compensation for verified and documented instances of fraud at $250 per occurrence, up to the amount of $5,000 in total.

d) Compensation of up to $100 for eligible California residents.

e) A potential residual cash paymnent of the remainder funds, which is estimated to be at $50 but may adjusted upward or downward based on how many other claims are made.

## HOW DO YOU SUBMIT A CLAIM?

| 9. | How do I get a benefit? |
|---|---|

To receive a benefit under the Settlement, you must complete and submit a claim for that benefit (a "Claim"). Every Claim must be made on a form ("Claim Form") available at **www.phdatasettlement.com** or by calling 1-###-###-####. Read the instructions carefully, fill out the Claim Form, provide the required documentation, and submit it according to the instructions on the Claim Form.

| 10. | How will claims be decided? |
|---|---|

The Settlement Administrator will decide whether and to what extent any Claim made on each Claim Form is valid.  The Settlement Administrator may require additional information.  If you do not provide the additional information in a timely manner the Claim will be considered invalid and will not be paid.

| 11. | When will I get my payment? |
|---|---|

The Court will hold a hearing on _____, 2023 at _____.m. ET to decide whether

to approve the Settlement. If the Court approves the Settlement, there may be appeals from that decision and  resolving them can take time, perhaps more than a year.  It also takes time for all the Claim Forms  to be processed.  Please be patient.

## WHAT DOES DEFENDANT GET?

**12.  What am I giving up as part of the Settlement?**

The Defendant gets a release from all claims covered by this Settlement. Thus, if the Settlement becomes final and you do not exclude yourself from the Settlement, you will be a Settlement Class Member and you will give up your right to sue Defendant and other persons ("Released Parties") as to all claims ("Released Claims") arising out of or relating to the Data  Incident. This release is described in the Settlement Agreement, which is available at **www.phdataettlement.com.** If you have any questions you can talk to the law firms  listed in Question 18 for free or you can talk to your own lawyer.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to be part of this Settlement then you must take steps to exclude yourself from the Settlement  Class.  This is sometimes referred to as "opting out" of the Settlement Class.

**13.  If I exclude myself, can I get a payment from this Settlement?**

No.  If you exclude yourself you will not be entitled to receive any benefits from the Settlement, but you will not be bound by any judgment in this case.

**14.  If I do not exclude myself, can I sue Defendant for the same thing later?**

No.  Unless you exclude yourself, you give up any right to sue Defendant (and any other Released Parties) for the claims that this Settlement resolves. You must exclude yourself from the Settlement Class to start your own lawsuit or to be part of any different lawsuit relating to the claims in this case. If you exclude yourself, do not submit a Claim Form to ask for any benefit under the Settlement.

**15.  How do I exclude myself from the Settlement?**

To exclude yourself, send a letter that says you want to be excluded from the Settlement in *Migliaccio v. Parker Hannifin Corporation*, Case No. 1:22-cv-835 (N.D. Ohio). The letter must: (a) state your full name, address, and telephone number; (b) contain your personal and original signature or the original signature of a person authorized by law to act on your behalf; and (c) state unequivocally your intent to be excluded from the Settlement. If your request for exclusion covers a financial account or health insurance plan that includes co-signers or co-holders on the same account or plan, you shall be deemed to be properly completed and executed as to that financial account or insurance plan only if all co-signers or co-holders elect to and validly opt-out. You must mail your exclusion request postmarked by **_____, 2023,** to:

Parker Hannifin Settlement Administrator
Attn: Exclusion Request
address
address

## OBJECTING TO THE SETTLEMENT

**16. How do I tell the Court that I do not like the Settlement?**

You can tell the Court that you do not agree with the Settlement or some part of it by objecting to the Settlement. The Court will consider your views in its decision whether to approve the Settlement. The Court can only approve or deny the Settlement and cannot change the terms. To object, you must mail your objection to the Clerk of the Court, Settlement Class Counsel and Defendant's Counsel, at the mailing addresses listed below, postmarked by **no later** than the objection deadline, **_____, 2023**:

| Court | Defendant's Counsel |
|---|---|
| Clerk of the Court<br>Carl B. Stokes U.S. Courthouse<br>801 W. Superior Avenue<br>Cleveland, OH 44113 | David Carney<br>Baker & Hostetler, LLP<br>127 Public Square, Suite 2000<br>Cleveland, OH 44114 |
| **Settlement Class Counsel** | |
| Terence Coates<br>Markovits, Stock, & DeMarco, LLC<br>119 East Court Street, Suite 530<br>Cincinnati, OH 45202 | |

Your objection must be written and must include all of the following: (i) your full name and address; (ii) the case name and docket number, *Migliaccio, et al., v. Parker Hannifin Corporation*, Case No. 1:22-cv-00835-DAP (N.D. Ohio); (iii) information identifying you as a Settlement Class Member, including proof that you are a member of the Settlement Class; (iv) a statement as to whether the objection applies only to you, to a specific subset of the Settlement Class, or to the entire Settlement Class; (v) a clear and detailed written statement of the specific legal and factual basis for each and every objection, accompanied by any legal support for the objection the objector believes applicable; (vi) the identity of any counsel representing you in connection with the objection; (vii) a statement whether you intend to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying that counsel; (viii) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objections and any documents to be presented or considered; and (ix) your signature or the signature of the your duly authorized attorney or other duly authorized representative (if any) representing you in connection with the objection.

Your objection must be written and must include all of the following: (i) your full name and address; (ii) the case name and docket number, *Migliaccio, et al., v. Parker Hannifin Corporation*, Case No. 1:22-cv-00835-DAP (N.D. Ohio); (iii) information identifying you as a Settlement Class Member, including proof that you are a member of the Settlement Class; (iv) a statement as to whether the objection applies only to you, to a specific subset of the Settlement Class, or to the entire Settlement Class; (v) a clear and detailed written statement of the specific legal and factual basis for each and every objection, accompanied by any legal support for the objection the objector believes applicable; (vi) the identity of any counsel representing you in connection with the objection; (vii) a statement whether you intend to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying that counsel; (viii) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objections and any documents to be presented or considered; and (ix) your signature or the signature of the your duly authorized attorney or other duly authorized representative (if any) representing you in connection with the objection.

| 17. | What is the difference between objecting and asking to be excluded? |
|---|---|

Objecting is telling the Court that you do not like the Settlement and why you do not think it should be approved. You can object only if you are a Settlement Class Member. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and do not want to receive any payment from the Settlement. If you exclude yourself, you have no basis to object because you are no longer a member of the Settlement Class and the case no longer affects you. If you submit both a valid objection and a valid request to be excluded, you will be deemed to have only submitted the request to be excluded.

## THE LAWYERS REPRESENTING YOU

| 18. | Do I have a lawyer in this case? |
|---|---|

Yes. The Court appointed Terence R. Coates of Markovits, Stock & DeMarco, LLC, 119 E. Court Street, Suite 530, Cincinnati, OH 45202 and Joseph M. Lyon of The Lyon Firm, LLC, 2754 Erie Avenue, Cincinnati, OH 45208 as Settlement Class Counsel, to represent the Class in settlement negotiations. If you want to be represented by your own lawyer, you may hire one at your own expense.

| 19. | How will the lawyers be paid? |
|---|---|

Settlement Class Counsel will ask the Court for an award for attorneys' fees up to $583,333.33, plus litigation expenses not to exceed $15,000. Defendant has agreed to pay any award of attorneys' fees, costs and expenses up to those amounts, to the extent approved by the Court. This payment for Attorneys' Fees will be made out of the Settlement Fund. Any such award would compensate Settlement Class Counsel for investigating the facts, litigating the case, and negotiating the Settlement and will be the only payment to them for their efforts in achieving this Settlement and for their risk in undertaking this representation on a wholly contingent basis.

Settlement Class Counsel will also ask the Court for a service award up to $3,500 for each of the  Settlement Class Representatives.

- 8 -

Any award for attorneys' fees, costs and expenses for Settlement Class Counsel, and for service awards to the Settlement Class Representatives, must be approved by the Court. The Court may award less than the amounts requested. Settlement Class Counsel's papers in support of final approval of the Settlement will be filed no later than _____, 2023 and their application for attorneys' fees, costs and expenses, and service awards will be filed no later than _____, 2023 and will be posted on the settlement website.

### THE COURT'S FAIRNESS HEARING

**20.    When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing at _____ m. ET on _____, 2023, at the Carl B. Stokes U.S. Courthouse, Courtroom 18B, 801 W. Superior Avenue, Cleveland, OH 44113 or by remote or virtual means as ordered by the Court. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are timely and valid objections, the Court will consider them and will listen to people who have asked to speak at the hearing if such a request has been properly made. The Court will also rule on the request for an award of attorneys' fees and reasonable costs and expenses, as well as the request for service awards for the Settlement Class Representatives. After the hearing the Court will decide whether to approve the Settlement. We do not know how long these decisions will take. The hearing may be moved to a different date or time without additional notice, so Settlement Class Counsel recommend checking **www.phdatasettlement.com** or calling 1-###-###-####.

**21.    Do I have to attend the hearing?**

No. Settlement Class Counsel will present the Settlement Agreement to the Court. You or your own lawyer are welcome to attend at your expense, but you are not required to do so. If you send an objection, you do not have to visit the Court to talk about it. As long as you filed your written objection on time with the Court and mailed it according to the instructions provided in Question 16, the Court will consider it.

**22.    May I speak at the hearing?**

You may ask the Court for permission to speak at the final fairness hearing. To do so, you must file an objection according to the instructions in Question 16, including all the information required.  Your objection must be **mailed** to the Clerk of the Court, Settlement Class Counsel and Defendant's Counsel, postmarked no later than _____, 2023.

### IF YOU DO NOTHING

**23.    What happens if I do nothing?**

If you do nothing you will not get any money from this Settlement. If the Settlement is granted final approval and the judgment becomes final, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendant and the other Released Parties based on any of the Released Claims, ever again.

**GETTING MORE INFORMATION**

| 24. | How do I get more information? |
|-----|--------------------------------|

This notice summarizes the proposed Settlement. More details are in the Settlement Agreement itself. A copy of the Settlement Agreement is available at **www.phdatasettlement.com.**   You may also call the Settlement Administrator with questions or to get a Claim Form at 1-###-###-####.

# EXHIBIT C

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# NORTHERN DIVISION

JOLYNNE CHRISTIANSEN, JOHN DOE,     )
EVELYN HARRIS, DANIEL     )
MCCORMICK, JOAN MIGLIACCIO,     )
MICHELLE MULANAX, GARY ROWE,     )
DAVID YANCEY, and KELLY ROSAL,     )
*individually and on behalf of all others*     )
*similarly situated*,     )
    )
    Plaintiffs,     )
    )
v.     )
    )
PARKER HANNIFIN CORPORATION,     )
    )
    Defendant.

Case No. 1:22-cv-835

Judge Hon. Dan Aaron Polster

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

_____

Before this Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"). The Court has reviewed the Motion and Settlement Agreement between Plaintiffs and Defendant Parker-Hannifin Corporation. After reviewing Plaintiffs' unopposed request for preliminary approval, this Court grants the Motion and preliminarily concludes that the proposed Settlement is fair, reasonable, and adequate.

IT IS HEREBY ORDERED THAT:

1. The Settlement Agreement,[1] including the proposed notice plan and forms of notice to the Class, the appointment of Plaintiffs Jolynne Christiansen, John Doe, Evelyn Harris, Daniel McCormick, Joan Migliaccio, Michelle Mulanax, Gary Rowe, and David Yancey as the Class Representatives, the appointment of Class Counsel for Plaintiffs and the Class, the approval of Kroll Settlement Administration, LLC as the Settlement Administrator, the various forms of class

---

[1] All capitalized terms used in this Order shall have the same meanings as set for in the Settlement Agreement.

relief provided under the terms of the settlement and the proposed method of distribution of settlement benefits, are fair, reasonable, and adequate, subject to further consideration at the Fairness Hearing described below.

2.     The Court does hereby preliminarily and conditionally approve and certify, for settlement purposes, the following Class:

**All natural persons residing in the United States who were sent a Notice Letter notifying them that their Private Information was compromised in the Data Incident.[2]**

3.     Based on the information provided: the Class is ascertainable; it consists of roughly 115,843 Class Members satisfying numerosity; there are common questions of law and fact including whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach, satisfying commonality; the proposed Class Representatives' claims are typical in that they are members of the Class and allege they have been damaged by the same conduct as the other members of the Class; the proposed Class Representatives and Class Counsel fully, fairly, and adequately protect the interests of the Class; questions of law and fact common to members of the Class predominate over questions affecting only individual members for settlement purposes; and a class action for settlement purposes is superior to other available methods for the fair and efficient adjudication of this Action.

4.     The Court appoints Plaintiffs Jolynne Christiansen, John Doe, Evelyn Harris, Daniel McCormick, Joan Migliaccio, Michelle Mulanax, Gary Rowe, and David Yancey as the Class Representatives.

---

[2] "Data Incident" shall mean the cybersecurity incident against Parker Hannifin giving rise to the Action.

5. The Court appoints Terence R. Coates of Markovits, Stock & DeMarco, LLC and Joseph M. Lyons of The Lyon Firm as Class Counsel for the Class.

6. The Court appoints Kroll Settlement Administration, LLC as the Settlement Administrator.

7. A Final Fairness Hearing shall be held before the Court on____[date]_____, 2023 at ___[time]_____ for the following purposes:

    a. To determine whether the proposed Settlement is fair, reasonable, and adequate to the Class and should be approved by the Court;

    b. To determine whether to grant Final Approval, as defined in the Settlement Agreement;

    c. To determine whether the notice plan conducted was appropriate;

    d. To determine whether the claims process under the Settlement is fair, reasonable and adequate and should be approved by the Court;

    e. To determine whether the requested Class Representative Service Awards of $3,500.00 each, and Class Counsel's combined attorneys' fees, of up to 1/3 of the Settlement Fund ($533,333.33), litigation expenses up to $15,000.00 should be approved by the Court;

    f. To determine whether the settlement benefits are fair, reasonable, and adequate; and,

    g. To rule upon such other matters as the Court may deem appropriate.

8. The Court approves, as to the form and content, the Notices (including the Short Notice). Furthermore, the Court approves the implementation of the Settlement Website and the proposed methods of mailing or distributing the notices substantially in the form as presented in the exhibits to the Motion for Preliminary Approval of Class Action Settlement, and finds that

such notice plan meets the requirements of Fed. R. Civ. P. 23 and due process, and is the best notice practicable under the circumstances, and shall constitute due and efficient notice to all persons or entities entitled to notice.

9.      The Court preliminarily approves the following Settlement Timeline for the purposes of conducting the notice plan, settlement administration, claims processing, and other execution of the proposed Settlement:

### SETTLLEMENT TIMELINE

| **From Order Granting Preliminary Approval** | |
| --- | --- |
| Defendant provides list of Class Members to the Settlement Administrator, if necessary | +14 days |
| Long and Short Notices Posted on the Settlement Website | +14 days |
| Notice Deadline | +30 days |
| Class Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Service Awards | +76 days |
| Objection Deadline | +90 days |
| Exclusion Deadline | +90 days |
| Settlement Administrator Provide List of Objections/Exclusions to the Parties' counsel | +100 days |
| Claims Deadline | +120 days |
| | |
| **Final Approval Hearing** | _____, 2023 |
| Motion for Final Approval | -14 days |
| | |
| **From Order Granting Final Approval** | |
| Effective Date | +31 days, assuming no appeal has been taken. See definition of Final in the Agreement. |
| Payment of Attorneys' Fees and Expenses Class Representative Service Awards | +45 days |
| Payment of Claims to Settlement Class Members | +65 days |
| Settlement Website Deactivation | +240 days |

10.      In order to be a timely claim under the Settlement, a Claim Form must be either postmarked or received by the Settlement Administrator no later than 90 days after the Notice Date. Class Counsel and the Settlement Administrator will ensure that all specific dates and

4

deadlines are added to the Class Notice and posted on the Settlement Website after this Court enters this Order in accordance with the timeline being keyed on the grant of this Order.

11. Additionally, all requests to opt out or object to the proposed Settlement must be received by the Settlement Administrator no later than 60 days after the Notice Date. Any request to opt out of the Settlement should, to the extent possible, contain words or phrases such as "opt-out," "opt out," "exclusion," or words or phrases to that effect indicating an intent not to participate in the settlement or be bound by this Agreement) to Kroll. Opt-Out notices shall not be rejected simply because they were inadvertently sent to the Court or Class Counsel so long as they are timely postmarked or received by the Court, Kroll, or Class Counsel. Class Members who seek to Opt-Out shall receive no benefit or compensation under this Agreement.

12. Class Members may submit an objection to the proposed Settlement under Federal Rule of Civil Procedure 23(e)(5). For an Objection to be valid, it must be filed with the Court within 60 days of the Notice Date and include each and all of the following:

(i)     his/her full name, address, and current telephone number;

(ii)    the name and number of this case;

(iii)   all grounds for the objection, with factual and legal support for the stated objection, including any supporting materials;

(iv)    the identification of any other objections he/she has filed, or has had filed on his/her behalf, in any other class action cases in the last four years; and,

(v)     the objector's signature. If represented by counsel, the objecting Settlement Class Member must also provide the name and telephone number of his/her counsel. If the objecting Settlement Class Member intends to appear at the Final Approval Hearing, either with or without counsel, he/she must state as such in the written

objection, and must also identify any witnesses he/she may call to testify at the Final Approval Hearing and all exhibits he/she intends to introduce into evidence at the Final Approval Hearing, which must also be attached to, or included with, the written objection.

Any Objection failing to include the requirements expressed above will be deemed to be invalid. Furthermore, any Class Member objecting to the Settlement agrees to submit to any discovery related to the Objection. Any Class Member objection to the Settlement agrees to submit to any discovery related to the Objection.

13.     All Settlement Class Members shall be bound by all determinations and judgments in this Action concerning the Settlement, including, but not limited to, the release provided for in the Settlement Agreement, whether favorable or unfavorable, except those who timely and validly request exclusion from the Class. The persons and entities who timely and validly request exclusion from the Class will be excluded from the Class and shall not have rights under the Settlement Agreement, shall not be entitled to submit Claim Forms, and shall not be bound by the Settlement Agreement or any Final Approval order as to Parker-Hannifin in this Action.

14.     Pending final determination of whether the Settlement Agreement should be approved, Plaintiffs and the Class are barred and enjoined from commencing or prosecuting any claims asserting any of the Released Claims against Parker-Hannifin.

15.     The Court reserves the right to adjourn the date of the Fairness Hearing without further notice to the potential Class Members, and retains jurisdiction to consider all further requests or matters arising out of or connected with the proposed Settlement. The Court may approve the Settlement, with such modification as may be agreed to by the Parties or as ordered by the Court, without further notice to the Class.

IT IS SO ORDERED.

/s/
The Honorable Dan A. Polster
United States District Judge

# EXHIBIT D

Migliaccio v. Parker-Hannifin
Corporation
c/o Settlement Administrator
P.O. Box XXXX
City, State Zip

FIRST-CLASS MAIL
U.S. POSTAGE PAID
CITY, STATE ZIP
PERMIT NO. XXXX

<<Barcode>>

Class Member ID: <<Refnum>>

## NOTICE OF CLASS ACTION SETTLEMENT

If you received a notice of data incident from Parker-Hannifin Corporation, you are entitled to submit a claim for monetary compensation under a class action settlement.

**www.phdatasettlement.com**

<<FirstName>> <<LastName>>
<<BusinessName>>
<<Address>>
<<Address2>>
<<City>>, <<ST>> <<Zip>>-<<zip4>>

## WHO IS A CLASS MEMBER?

In the lawsuit *Riehm, et al. v. Parker-Hannifin Corp.*, Case #: 22-cv-835 (N.D. Ohio), you are a class member if your personal or health information was potentially compromised as a result of the cyber-attack that Parker-Hannifin Corporation ("Parker") discovered in March 2022 (the "Settlement Class").

## WHAT ARE THE SETTLEMENT BENEFITS AND TERMS?

Under the Settlement, Parker has agreed to pay $1,750,000 into a Settlement Fund which will be distributed to Class Members who submit valid Claims, after deducting the named Plaintiffs' Service Awards, Class Counsel's attorneys' fees and expenses, and settlement administration notice and administration costs, if such awards are approved by the Court. All Class Members may submit Claims to receive cash payments. Class Members who believe they suffered out-of-pocket expenses as a result of the Data Incident may claim up to $5,000 (subject to pro rata adjustment) for the reimbursement of sufficiently documented expenses. Class Members who spent time dealing with misuse of their personal information as a result of the Data Incident may claim up to $100. Class Members who can prove verified fraudulent activity as a result of the Data Incident may claim up to $5,000 with documented proof. Class Members who were residents of California at the time of the Data Incident may claim an additional $100. An estimated $50 cash payment may be made to claimants if there is a remaining balance in the Settlement Fund after payments for valid Claims, settlement administration costs and expenses, attorneys' fees and expenses, and any Class Representative Service Awards. These cash payment amounts may not be $50, as they will be adjusted upwards or downwards depending on the amount of valid Claims. More information about the types of Claims and how to file them is available at the Settlement Website.

## WHAT ARE YOUR RIGHTS AND OPTIONS?

**Submit a Claim Form**. To qualify for a cash payment, you must timely mail a Claim Form that is attached to this notice or timely complete and submit a Claim Form online at **www.phdatasettlement.com** ("Settlement Website"). Your Claim Form must be postmarked or submitted online no later than _____, 2023. Kroll Settlement Administration is the Settlement Administrator.

**Opt Out**. You may exclude yourself from the Settlement and retain your ability to sue Parker on your own by mailing a written request for exclusion to the Settlement Administrator that is postmarked no later than _____, 2023. If you do not exclude yourself, you will be bound by the Settlement and give up

your right to sue regarding the released claims.

**Object**. If you do not exclude yourself you have the right to object to the Settlement. Written objections must be signed, postmarked no later than _____, 2023, and provide the reasons for the objection. Please visit www.phdatasettlement.com for more details.

**Do Nothing**. If you do nothing, you will not receive a Settlement payment and will lose the right to sue regarding the released claims. You will be bound by the Court's decision because this is a conditionally certified class action.

**Attend the Final Approval Hearing**. The Court will hold a **Final Approval Hearing at _____ m. on _____, 2023** to determine if the Settlement is fair, reasonable, and adequate. All persons who timely object to the Settlement may appear at the Final Approval Hearing.

**Who are the attorneys for the Plaintiffs and the proposed Class?** The Court appointed Terence R. Coates and Joseph M. Lyon as Class Counsel to represent the Settlement Class.

**Do I have any obligation to pay attorneys' fees or expenses?** No. The attorneys' fees and expenses will be paid exclusively from the Settlement Fund as awarded and approved by the Court. The attorneys' fees will be in an amount of up to $583,333.33, and the expenses will not exceed $15,000.00. The motion for attorneys' fees and expenses will be posted on the Settlement Website after it is filed with the Court.

**What is the amount of the Class Representative Services Awards?** The named plaintiffs, also called the Class Representatives will seek Service Awards in the amount of $3,500 each for their efforts in this case.

**Who is the Judge overseeing this settlement?** Judge Dan Aaron Polster, United States District Judge, Northern District of Ohio.

**Where may I locate a copy of the settlement agreement, learn more about the case, or learn more about submitting a Claim?**
www.phdatasettlement.com

\*\*\* Please note that if you wish to submit a claim for compensation for out-of-pocket losses on the attached Claim Form, you will likely need to submit your claim online so you may attach all information necessary to support your request for payment. A longer version of the Claim Form may be accessed on the Settlement Website.

**This Notice is a summary of the proposed Settlement.**



Postage
Required

Migliaccio v. Parker-Hannifin
Corporation
c/o Settlement Administrator
P.O. Box XXXX
City, State Zip

1:22-cv-00835 Class Member ID

<<Refnum>>

**CLAIM FORM**

**Claims must be postmarked no later than _____, 2023. You may also submit a Claim Form online no later than _____, 2023.**

NAME: _____ ADDRESS: _____

**Monetary Compensation**

1. **Pro Rata Cash Payment of $50**: Would you like to receive a pro rate cash payment of $50? (circle one)      Yes          No
   If you are a Settlement Class Member, you may receive a $50 cash payment, which may be increased or decreased *pro rata* from funds remaining in the Settlement Fund after all claims are submitted and deductions are made from the Settlement Fund.

2. **Lost Time**: I am submitting a claim for monetary compensation of $ _____ for _____ hours of time spent remedying issues related to the Data Incident. I understand any monetary compensation I may receive under the Settlement for time spent is capped at four (4) total hours at a rate of $25 per hour for a total amount of $100.

3. **Out-of-Pocket Expenses**: I am submitting a claim for out-of-pocket monetary expenses in the amount of $_____ (not more than $5,000) on account of out-of-pocket expenses and/losses I incurred as a result of the Data Incident. I understand that I am required to provide supporting third-party documentation to support my claim, such as providing copies of any receipts, bank statements, or other documentation supporting my claim. I understand that "self-prepared" documents are insufficient to receive reimbursement. I understand the Settlement Administrator may contact me for additional information before processing my claim. I understand that if I lack information supporting my claim, I will likely not receive compensation for this Settlement benefit. I understand any monetary compensation I may receive under the Settlement for out-of-pocket monetary expenses is capped at $5,000.

4. **Verified Fraud**: I am submitting a claim for monetary compensation in the amount of $ _____ for verified incidents ($250 per occurrence) of fraud which occurred as a result of the Data Incident. I understand that I am required to provide supporting third-party documentation to support my claim. I understand the Settlement Administrator may contact me for additional information before processing my claim. I understand that if I lack information supporting my claim, I will likely not receive compensation for this Settlement benefit.  I understand any monetary compensation is capped at $5,000.

5. **California Resident Cash Payment**: Were you a resident of California at the time of the In March 2022? (circle one)     Yes          No

   I understand any monetary compensation I may receive under the settlement due to my California residency is capped at $100.

**By signing my name below, I swear and affirm that the information included on this Claim Form is true and accurate, and that I am completing this claim form to the best of my personal knowledge.**

_____ **(signature)**